IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

**YUNSONG ZHAO**,         )
                                )
      Plaintiff,         )
                                )
v.                                )
                                )   Case No.: _7:18CV189__
**VIRGINIA POLYTECHNIC INSTITUTE**  )
**AND STATE UNIVERSITY**   )
**("VIRGINIA TECH")**,    )
**JAMES C. MCCLAIN**,    )
in his individual capacity,    )
**BRIAN WILSON**,       )   **JURY TRIAL DEMANDED**
in his individual capacity, and   )
**ROHSAAN SETTLE**,     )
in his individual and official capacities.  )
                                )
      Defendants.     )

## COMPLAINT

Plaintiff, Yunsong "Bellamy" Zhao ("Mr. Zhao"), files this Complaint

against Virginia Polytechnic Institute and State University ("Virginia Tech"),

James C. McClain, Brian Wilson, and Rohsaan Settle ("Defendants") pursuant to

42 U.S.C. § 1983 with respect to vindicating his rights guaranteed by the Fourth,

Fifth, and Fourteenth Amendments of the U.S. Constitution.

## INTRODUCTION

This case is about over-eager police trampling over a foreign student's

rights because he resembles a student who committed a mass shooting on

Virginia Tech's campus in 2007. The Virginia Tech Police Department targeted Mr. Zhao based on his national origin and his stated interest in guns and arrested him on evidence that is known to be false. After the Virginia Tech Police arrested Mr. Zhao, they did not find any evidence to corroborate the only criminal allegation they have against him. The facts show that Mr. Zhao has never possessed a 30-round magazine in violation of Virginia law.

Once he was arrested, the Virginia Tech Office of Student Conduct, knowing that Mr. Zhao was in jail, denied him his opportunity to be heard by refusing to reschedule his hearing and holding it in his absence anyway. Student Conduct then terminated his enrollment at Virginia Tech. Since Mr. Zhao was in the United States on a student visa, Virginia Tech Student Conduct also stripped him of his immigration status when they ended his enrollment. The university happily alerted ICE that Mr. Zhao had lost his immigration status; once he was granted bail pending his criminal trial, Virginia Tech made sure that ICE detained Mr. Zhao before he was able to leave jail. Student Conduct then denied Mr. Zhao's one available appeal based on false information.

## JURISDICTION AND VENUE

1.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(4), under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) and L.R. 2(b) because (1)

a substantial part of the events and omissions giving rise to Mr. Zhao's claims

occurred within this District and Division and (2) Defendants reside and transact

business in this District and Division.

## ADMINISTRATIVE EXHAUSTION

2.

Mr. Zhao has exhausted all available administrative remedies through the

Office of Student Conduct prior to the filing of this Complaint.

## PARTIES

3.

At all times relevant to this Complaint, Yunsong Zhao was lawfully

residing in the United States on an F-1 Student Visa and was a student at

Virginia Tech. Mr. Zhao, at all times relevant to this Complaint, had clearly

established legal rights under federal law and the United States Constitution. Mr.

Zhao submits himself to the jurisdiction of this Court and is entitled to bring this

action under federal law for declaratory relief and all general, special,

compensatory, punitive, and any other permissible damages.

4.

At all times relevant to this Complaint, Defendant Virginia Polytechnic

Institute and State University ("Virginia Tech") was a public university

incorporated by statute in the Commonwealth of Virginia, County of

3

Montgomery, and City of Blacksburg. Also, at all times relevant to this Complaint, Virginia Tech was the public employer of Defendants McClain and Settle. Virginia Tech's policies failed to provide Mr. Zhao with due process regarding his Student Conduct hearing and subsequent dismissal from the university.

Mr. Zhao is using 42 U.S.C. § 1983 as the vehicle to sue Virginia Polytechnic Institute and State University regarding its failure to protect Mr. Zhao's constitutionally guaranteed right to procedural due process. Virginia Tech may be served by serving its President, personally, at his place of employment.

5.

At all times relevant to this Complaint Defendant James C. McClain was a United States citizen, a Virginia resident, and a sworn Sergeant of the Virginia Tech Police Department. Sergeant McClain signed the arrest warrant for Mr. Zhao knowing that he had an unreliable eyewitness account, with no corroborating physical evidence, based on information and belief. At all relevant times to this Complaint Sergeant McClain was acting under the color of state and federal laws. At all relevant times, Sergeant McClain was subject to the laws of the Commonwealth of Virginia and the Constitution of the United States. Mr. Zhao is using 42 U.S.C. § 1983 to sue Sergeant McClain in his individual and

4

official capacities. Sergeant McClain may be served personally at his place of employment.

6.

At all times relevant to this Complaint Defendant Brian Wilson was a United States citizen, a Virginia resident, and a sworn Officer of the Blacksburg Police Department. Detective Wilson followed Mr. Zhao to the shooting range expecting to see him shooting a 30-round magazine from his AR-15 based on reports from the Virginia Tech Police Department. Detective Wilson's eyewitness account of Mr. Zhao is sole basis for the arrest. At Mr. Zhao's preliminary hearing, Detective Wilson misidentified a 20-round magazine for a 30-round magazine from a still photo. His testimony that he saw Mr. Zhao shooting a 30-round magazine at the gun range—when Detective Wilson could not even remember whether or not he counted how many shots he heard or saw Mr. Zhao shooting—is clearly false, and at best unreliable. Detective Wilson never made any attempt to determine if Mr. Zhao has ever purchased a 30-round magazine, despite knowing that this information could be easily attainable, upon information and belief. Detective Wilson's wholly unsupported and unreliable statement about the magazine size cost Mr. Zhao his freedom, his enrollment at Virginia Tech, and his lawful immigration status.

At all relevant times to this Complaint Detective Wilson was acting under the color of state and federal laws. At all relevant times, Detective Wilson was subject to the laws of the State of Virginia and the Constitution of the United States. Mr. Zhao is using 42 U.S.C. § 1983 to sue Detective Wilson in his individual and official capacities. Detective Wilson may be served personally at his place of employment.

7.

At all times relevant to this Complaint Defendant Rohsaan Settle was a United States citizen, Virginia resident, and the Director of Student Conduct at Virginia Tech. Mr. Settle wrongfully denied Mr. Zhao an opportunity to be heard at a Student Conduct hearing because he was incarcerated and wrongfully expelled Mr. Zhao from Virginia Tech. At all relevant times to this Complaint, Mr. Settle blatantly ignored Mr. Zhao's established due process rights, to include holding a hearing while knowing Mr. Zhao could not attend said hearing, and never attempting to re adjust the hearing date so that Mr. Zhao's could attend a hearing that affected his entire life. Mr. Zhao is using 42 U.S.C. § 1983 to sue Mr. Settle in his individual and official capacities. Mr. Settle may be served personally at his place of employment.

## STATEMENT OF FACTS

### I. Virginia Tech Police Falsely Arrested Mr. Zhao for Possession of a 30-round Magazine Based on Faulty Evidence

8.

Mr. Zhao arrived in the United States from his home country, China, in July of 2017 to study at Virginia Tech University. He began those studies on July 5, 2017.

9.

Mr. Zhao was required to have full time enrollment (12 academic hours per semester) at Virginia Tech pursuant to his F-1 Student Visa.

10.

In August 2017, Mr. Zhao purchased a used police vehicle from a dealership in Roanoke, VA; the vehicle was a blue and silver Crown Victoria.

11.

Mr. Zhao has a stated interest in guns. He applied for and received a hunting license in Virginia on November 26, 2017. He legally obtained a Norinco SKS rifle on December 8, 2017.

12.

At all times during his tenure at Virginia Tech, Mr. Zhao complied with the Student Code of Conduct requiring all firearms to be stored in the student gun locker on campus with the Virginia Tech Police Department. He checked the

7

SKS rifle out seven times between December 8, when he purchased the gun, and January 7, 2018.

### a. Mr. Zhao Bought the AR-15

13.

On January 25, 2018, Mr. Zhao legally obtained a Bushmaster XM-15 AR rifle (an AR-15) that he ordered from Indiana. He conducted the sale through Pawn Plus in Christiansburg, VA. Mr. Zhao was subject to, and passed, a background check conducted by Pawn Plus prior to the sale.

14.

In Virginia, non-U.S. citizens or non-permanent residents are prohibited from owning assault rifles. Under Virginia law, an assault rifle is a semi-automatic weapon that is "is equipped at the time of the offense with a magazine which will hold **more than 20 rounds of ammunition**."[1]

15.

The AR-15 came with two 30-round magazines. Mr. Zhao, knowing that Virginia law prohibited him from possessing these magazines, never took possession of them and they never left the store. Mr. Zhao traded the 30-round magazines at Pawn Plus for a tactical sling.

---

[1] Va. Code Ann. § 18.2-308.2:01 (Emphasis added).

16.

Mr. Zhao never had possession of a 30-round magazine at any point while he owned the AR-15.

17.

After he traded the 30-round magazines at Pawn Plus, Mr. Zhao purchased two **20-round** magazines at Matt Hagan Outdoors in Blacksburg, VA. He bought the only two 20-round plastic magazines ("PMAGs") that Matt Hagan Outdoors had in stock that day.

18.

Mr. Zhao obtained a third 20-round PMAG from White Tail Outfitters in Christiansburg, VA.

## b. Police Followed Mr. Zhao to the Gun Range Expecting to See Him Firing a 30-round Magazine

19.

On January 26, 2018, Mr. Zhao signed out his AR-15 to take to the Blacksburg Shooting Range located in Jefferson National Forest. His friend Taotao Wang accompanied Mr. Zhao to the shooting range. Both men shot the AR-15.

20.

Mr. Zhao and Mr. Wang took photos and videos of the AR-15 and three 20-round PMAGs during his trip to the shooting range. There is no

documentation from that trip showing Mr. Zhao shooting more than 20 rounds per magazine.

21.

Virginia Tech Police reached out to the Blacksburg Police Department to ask the Blacksburg Police Department to follow Mr. Zhao to the shooting range on January 26. Detective Brian Wilson from the Blacksburg Police Department followed Mr. Zhao to the shooting range.

22.

While at the shooting range, Detective Wilson purportedly witnessed Mr. Zhao shooting a 30-round magazine from his AR-15. He has no evidence, neither photos nor videos, to corroborate his account.

23.

While at the shooting range, Detective Wilson was approximately 60 feet away from Mr. Zhao. There was another individual at the shooting range in between Detective Wilson and Mr. Zhao during that time.

24.

Detective Wilson could not recall which booth number Mr. Zhao was using when he was at the range. He could not recall which booth he used to surveil Mr. Zhao.

25.

Detective Wilson could not recall how many magazines Mr. Zhao had in his possession while at the firing range. Detective Wilson stated during Mr. Zhao's preliminary hearing that he only saw Mr. Zhao with one magazine.

26.

Mr. Zhao was with his friend Mr. Wang. Detective Wilson could not recall whether he saw Mr. Zhao alone firing the weapon or whether Mr. Wang also fired the weapon while Detective Wilson was there. Detective Wilson also could not remember which Chinese man, either Mr. Zhao or Mr. Wang, was shooting the weapon when he arrived at the range. Yet, Detective Wilson "know[s] [he] saw Mr. Zhao firing the 30 round magazine."[2]

27.

Detective Wilson could not recall how many shots were fired from the weapon while Mr. Zhao was shooting. The entire purpose of the visit by Detective Wilson was to observe Mr. Zhao shooting his rifle more than 20 times from the same magazine, yet Detective Wilson could not recall counting the shots that Mr. Zhao fired.

---

[2] Transcript, Preliminary Hearing, March 1, 2018, page 36, lines 1-2.

28.

The only time that Detective Wilson recalls seeing Mr. Zhao shooting the alleged 30-round magazine was when Detective Wilson walked past Mr. Zhao as Detective Wilson arrived at the shooting range and proceeded to set up his own rifle 60 feet away.

29.

Detective Wilson stated that he could tell the difference between a 20-round plastic magazine (approximately 5 inches) and a 30-round plastic magazine (approximately 7.5 inches) as he was walking past Mr. Zhao. Both magazines look identical except a difference of 2.5 inches in length.

30.

Detective Wilson stated at Mr. Zhao's preliminary hearing that he could tell the difference in magazine based on his experience and expertise with guns both as a civilian and as a police officer.

31.

At the preliminary hearing, Mr. Wolfrey, Mr. Zhao's attorney, showed Detective Wilson a photograph, taken by Mr. Zhao on January 26, 2018 while he was at the shooting range, of his AR-15 and his three 20-round PMAGs. Detective Wilson identified two 20-round PMAGs and **misidentified the third magazine as a 30-round.**

32.

Detective Wilson misidentified a 20-round magazine as a 30-round magazine **from a still photo** on the record in a hearing. Yet, while feet away at the shooting range, while passing by Mr. Zhao casually, he states that he knows definitively that he saw a 30-round magazine in the AR-15. Further, Detective Wilson has no other evidence that Mr. Zhao was shooting a 30-round magazine at the shooting range, including counting the number of shots.

33.

In addition to taking photos on January 26, 2018 while they were at the shooting range, Mr. Zhao and Mr. Wang took video footage. Mr. Wolfrey showed the video footage at the preliminary hearing and counted 20 shots before Mr. Zhao changed magazines.

34.

The only magazines that were photographed that day were 20-round magazines.

### c. Virginia Tech Police Department Showed a Pattern of Harassment Toward Mr. Zhao

35.

Mr. Zhao was a target of the Virginia Tech police department for questioning throughout the fall semester in 2017. They questioned him repeatedly about the police car he bought.

13

36.

Based on nothing but suspicion, the Virginia Tech Police Department reached out to local gun shops telling them not to sell Mr. Zhao weapons.

37.

The first time Mr. Zhao attempted to buy a firearm after receiving his hunting license, he was denied. Mr. Zhao went to Atlas Tactical in Newport, VA to buy an SKS rifle. Once Mr. Zhao chose the rifle he wanted to purchase, the sales associate told him that he had not passed his background check. Mr. Zhao, confused as to why he would have failed a background check, went to the State Troopers' Division Headquarters in Salem, VA to ask about his background check. The State Trooper Mr. Zhao spoke with informed him that he had actually passed the background check. Mr. Zhao later returned to the shop to buy ammunition once he purchased an SKS through a private sale. Again, the store refused to sell to Mr. Zhao. When asked for their rationale, the sales associate told Mr. Zhao that Sergeant McClain of the Virginia Tech Police had asked Atlas Tactical not to sell Mr. Zhao weapons and the store chose to comply with Sergeant McClain's request.

38.

The Virginia Tech Police intensely questioned Mr. Zhao the first time he brought the SKS to store in the university student gun locker, which is mandated

by university policy. At that time, Officer Montgomery seemed surprised that Mr. Zhao had been able to obtain a weapon and asked him many questions about the SKS. Depending on the officer at the check-in, the pattern of interrogating Mr. Zhao continued about half the times he used the locker to store his gun.

39.

On another occasion, Mr. Zhao and Mr. Wang took the SKS to Safeside Tactical in Roanoke, VA to shoot at the shooting range there. Mr. Zhao had been there twice before as a patron of the shooting range. Upon arriving at the range and giving the store his ID, Mr. Zhao was told that he was on the store's "black list" and therefore could not check out guns or use the shooting range. Mr. Wang, however, was not on the "black list" and successfully used Mr. Zhao's SKS at the range that day. No official reason was given to Mr. Zhao for his presence on the "black list" but the associate told him that the store would probably comply if Virginia Tech Police had asked them not to allow Mr. Zhao to use their range.

40.

The Virginia Tech Police had no basis for suspicion of Mr. Zhao except that he drove a used police car; Mr. Zhao also happens to be Asian, the same Asian nationality of the person who killed 17 Virginia Tech Students in 2007.

41.

Sergeant McClain testified at Mr. Zhao's preliminary hearing that the Virginia Tech Police had noticed him because of his ownership of the Crown Victoria and had seen him around a lot of traffic stops.

42.

Mr. Zhao believes that he stuck out because of his purchase of the police car. He did not purposefully seek out Virginia Tech Police traffic stops. Virginia Tech is a small campus and the Police simply knew where he was because they knew the appearance of his car.

### d. The Arrest of Mr. Zhao and Search of his Property

43.

Though the probable cause for the arrest of Mr. Zhao is based entirely on Detective Wilson's testimony that he witnessed Mr. Zhao shooting his AR-15 with a 30-round magazine, Detective Wilson did not arrest Mr. Zhao at the shooting range, where this alleged crime took place.

44.

Mr. Zhao was not even arrested on the same day that Detective Wilson *allegedly* saw Mr. Zhao with the 30-round magazine, Friday, January 26, 2018.

45.

Virginia Tech Police arrested Mr. Zhao on Monday, January 29, 2018 for illegal possession of an assault rifle of a non-U.S. Citizen or a Legal Permanent Resident in violation of Va. Code. Ann. § 18.2-308.2:01.

46.

Virginia Tech Police found no 30-round magazine in Mr. Zhao's possession. They searched his dorm room, his Crown Victoria, and his second car, a red F-150.

47.

Even though Virginia Tech Police found no 30-round magazine in his possession, the arrest of Mr. Zhao is solely based on his possession and use of a 30-round magazine. Other than Detective Wilson's testimony, there is no evidence that Mr. Zhao has ever used a 30-round magazine with his AR-15. There is no record or documentation to support Detective Wilson's assertion.

48.

During their *post*-arrest investigation of Mr. Zhao, Virginia Tech Police contacted the manager of White Tail Outfitters, where Mr. Zhao had bought the third of his 20-round PMAGs. Monte, the sales associate who sold the PMAG to Mr. Zhao, told Virginia Tech Police that it was probably a 30-round magazine. The language in the police report is "almost certain." Virginia Tech Police asked

the manager for the receipt of the purchase to confirm. They, however, did not furnish the receipt as evidence at the preliminary hearing, because it was a receipt for a 20-round magazine and therefore did not corroborate Detective Wilson's account as the Police expected.

## II. Virginia Tech Does Not Give Mr. Zhao Due Process

### a. Mr. Zhao Was Caught with a Knife with a Blade In Excess of 4 Inches

49.

Virginia Tech adheres to a Code of Student Conduct. That Code is enforced by the University Student Conduct System.

50.

Mr. Zhao's first run-in with the Student Conduct system was a conversation with Officer Micah Pasquarell of the Virginia Tech Police on January 6, 2018.

51.

While waiting to pick up a friend, Mr. Zhao was parked outside a residence hall. Officer Pasquarell drove past Mr. Zhao waiting in the car, saw he was in the car—knowing who he was because Mr. Zhao was driving the Crown Victoria—and made a U-turn to come speak with Mr. Zhao. Officer Pasquarell began the conversation by telling Mr. Zhao that he was not under arrest and that Officer Pasquarell was just seeing what Mr. Zhao was up to.

18

52.

After running Mr. Zhao's ID, Officer Pasquarell asked Mr. Zhao if he had any weapons in his car. Initially, Mr. Zhao answered that he did not have any weapons, but he then realized that he had a knife in the backseat of his car. Mr. Zhao proceeded to tell Officer Pasquarell that he did have a knife, which Officer Pasquarell could see in the back seat of the car.

53.

The Virginia Tech Code of Student Conduct prohibits knives with blades longer than 4 inches.

54.

Being from China, Mr. Zhao did not know the measurement of the knife in inches. In China, they use centimeters as their system of measurement.

55.

The knife that was in Mr. Zhao's car has a blade that is 5 inches long.

56.

Officer Pasquarell did not seize the blade, though he did tell Mr. Zhao that he is not allowed to have the knife on campus. Officer Pasquarell reported Mr. Zhao's possession of the knife to Student Conduct.

Student Conduct scheduled a hearing for Mr. Zhao about his possession of the knife on campus for February 2, 2018.

58.

Mr. Zhao met with Kyle Rose, a Student Conduct Coordinator, on Friday, January 26, 2018 for a pre-hearing meeting regarding his violation of the Code of Student Conduct by possessing the knife on campus. Mr. Rose told Mr. Zhao that the most serious sanction he would probably face for possessing a knife on campus was suspension but told Mr. Zhao not to be worried since it was his first offense. Mr. Rose told Mr. Zhao that he would most likely receive no sanction for this infraction.

**b. Mr. Zhao is Dubbed a Danger to the University Though He Had Committed No Acts of Violence or Shown Any Violent Tendencies**

59.

Mr. Zhao is arrested by the Virginia Tech Police on January 29, 2018—days prior to his Student-Conduct Hearing.

60.

The Virginia Tech Police executed the search warrant on Mr. Zhao's property after his arrest. They do not find any weapons in his residence hall or in the red F-150. In his Crown Victoria, they find three 20-round magazines for an AR-15 and a knife with a blade that is 5 inches long.

61.

It is not a violation of the Code of Student Conduct to have ammunition on campus. Ammunition is only expressly prohibited to be in the residence halls. The Code of Student Conduct states: "Unauthorized possession, storage, or control of firearms, weapons, **on university property**, including storing weapons in vehicles on campus as well as in the residence halls. Furthermore, **ammunition** cannot be stored in any residence halls on campus." (Emphasis in original).[3]

62.

As already stated, the knife is a violation of the Student Code of Conduct.

63.

The Office of Student Conduct placed Mr. Zhao on interim suspension from the University after finding the knife and ammunition in the trunk of his Crown Victoria. Interim suspension includes a ban from being present on the Virginia Tech campus. The interim suspension policy reads in part, "[t]he university retains the authority to impose an interim (immediate) suspension if such action is necessary **to preserve the safety of persons or property**. . . if the situation is sufficiently serious, the Threat Assessment Team or the associate vice

---

[3] "Weapons," Virginia Tech Code of Student Conduct.

president for student affairs or his/her designee will determine if an interim suspension is appropriate." (emphasis added).[4]

64.

The Threat Assessment Team is a group of university officials, including university police, created in response to the 2007 mass shooting on the Virginia Tech campus.

65.

The 2007 shooter on the Virginia Tech campus was also an Asian man.

66.

Since they issued Mr. Zhao an interim suspension, the Threat Assessment Team had deemed him a danger to people or property on the Virginia Tech campus. The Team decided this based on finding a small knife in Mr. Zhao's car two times. There are no allegations of Mr. Zhao using the knife for any purpose.

67.

Mr. Zhao has no history of violence. Both his guns were stored in the student gun locker at the time of his arrest and subsequent interim suspension.

---

[4] "Interim Suspension Policy," Virginia Tech Code of Student Conduct.

### c. Virginia Tech Refuses to Reschedule Mr. Zhao's Student Conduct Hearing

68.

After his arrest on January 29, Student Conduct alerted Mr. Zhao that both instances of possessing the knife on campus would be combined into one hearing. That hearing was already scheduled for February 2, 2018.

69.

On January 31, 2018, Mr. Zhao called Kyle Rose from the Montgomery County Jail to ask him to reschedule his Student Conduct hearing. This call to Mr. Rose is his last free phone call from the jail. Mr. Zhao explained to Mr. Rose that he was incarcerated and would not be able to attend the hearing. Mr. Zhao had no money to make additional phone calls.

70.

Student Conduct did not reschedule the hearing.

71.

Student Conduct held the hearing in Mr. Zhao's absence, though they had previous knowledge of his inability to attend.

### d. In His Absence, Mr. Zhao is Dismissed From Virginia Tech

72.

Mr. Zhao was found responsible for "Failure to Comply with a University Official" and "Unauthorized Possession of a Weapon on Campus" in reference to the January 6, 2018 incident where the knife was in the backseat of his car.

73.

Mr. Zhao was found responsible for another count of "Unauthorized Possession of a Weapon on Campus" in reference to the police finding the knife in Mr. Zhao's car upon executing the search warrant.

74.

Mr. Zhao was found responsible for a second count of "Failure to Comply with a University Official" for unknown reasons.

75.

Student Conduct imposed its sanction on February 5, 2018, which was dismissal from the university.

76.

Since Mr. Zhao was in the United States on a Student Visa, his dismissal from the university terminated his immigration status.

77.

Virginia Tech officials immediately notified ICE of Mr. Zhao's expulsion. Once Mr. Zhao was released from Montgomery County Jail on bail pending his criminal trial, ICE detained Mr. Zhao based on the termination of his Student Visa.

### e. Student Conduct Denied Mr. Zhao's Only Available Appeal

78.

The University Student Conduct System only allows one appeal of all formal hearing decisions. "Appeals must be based only on the following grounds: (1) denial of procedural guarantees, (2) significant and relevant new evidence that was not available at the time of the hearing, and/or (3) sanctions/findings that are unduly harsh or arbitrary. Appeal requests will be denied in cases not having sufficient grounds in one or more of these areas."[5]

79.

Mr. Zhao timely submitted an appeal of his dismissal from Virginia Tech claiming all three grounds for appeal. He asserted that (1) he was not given any procedural guarantees because Student Conduct refused to reschedule his hearing; (2) he could have been in possession of new significant and relevant

[5] "Student Conduct Formal Hearing Appeals," The University Student Conduct System.

evidence because he was not told what evidence was provided and held against him; and, (3) his sanction, based on possession of a small knife on campus two times, was unduly harsh.

80.

Student conduct denied Mr. Zhao's appeal on March 7, 2018.

### f. The Denial of Mr. Zhao's Appeal was Based on False Information

81.

In the letter denying Mr. Zhao's appeal, Student Conduct made many mistakes.

82.

Their letter provided incorrect dates for his conduct violations, stating that on January 6 and January 22, Mr. Zhao was in possession of weapons on campus. The dates are actually January 6 and January 29.

83.

The letter also stated "in the second matter, on January 22, Virginia Tech police, upon execution of a search warrant, seized 700 rounds of ammunition, an AR-15 weapon, as well as a fixed blade knife from the trunk of your vehicle on campus." On January 22, Mr. Zhao did not own an AR-15 because he had not purchased it yet. On January 29, when Virginia Tech Police executed their search warrant, the AR-15 was not found in the car because it was in the student gun

locker on campus. And, as has already been stated, storage of ammunition is only prohibited in the residence halls, so that is not a violation of the Code of Student Conduct.

84.

Mr. Zhao's student gun locker check-in/check-out records show that his last recorded action was checking in the AR-15 on January 26, 2018.

85.

The University Student Conduct System only allows one appeal, so Mr. Zhao has no recourse left to try to remedy his unjust dismissal from Virginia Tech.

## COUNT I

**42 U.S.C. § 1983—VIOLATION OF FOURTH AMENDMENT RIGHT TO FREEDOM FROM FALSE ARREST**
*(Against Defendants McClain and Wilson)*

86.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1–48, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

87.

Based on the incorporated facts to support this Count, Defendants McClain and Wilson unconstitutionally arrested Mr. Zhao based on presenting

known false information to a court to secure an arrest warrant in violation of his Fourth Amendment rights. As a result, Mr. Zhao is entitled to compensatory damages permissible under controlling law.

## COUNT II

**42 U.S.C. § 1983 — VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS**
*(Against Defendant Settle in his individual capacity)*

88.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1–7 and 49–85, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

89.

Based on the incorporated facts that support this Count, Defendant Settle deprived Mr. Zhao of his constitutionally-guaranteed right to procedural due process. Mr. Settle refused to reschedule Mr. Zhao's hearing when they knew he was incarcerated and was unable to call in for his hearing, and subsequently denied his only appeal based on false information. As a result, Mr. Zhao is entitled to compensatory damages permissible under controlling law.

## COUNT III

### INJUNCTIVE RELIEF AND DECLARATORY RELIEF
**(*Against Defendants Virginia Tech and Settle in his individual and official capacities.*)**

90.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1–89, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

91.

Based on the incorporated facts to support this Count, Mr. Zhao requests immediate injunctive relief in the form of mandating his re-instatement to Virginia Tech and/or mandating an immediate hearing to which he must be present.

92.

Based on the incorporated facts to support this Count, Mr. Zhao requests immediate declaratory relief in the form of declaring that his due process rights have been violated

## COUNT IV

### PUNITIVE DAMAGES

### 93.

Based on the facts alleged in this complaint, Plaintiff is entitled to punitive damages under all applicable laws, because Defendants acted with a willful and conscience indifference to the laws that protect Mr. Zhao's constitutional rights.

## COUNT IV

### ATTORNEY'S FEES

### 94.

Based on the facts alleged in this Complaint, Plaintiff is entitled to attorney's fees under all applicable laws.

## COUNT V

### SPECIAL DAMAGES
*(Against Defendants McClain and Wilson in their individual capacities)*

### 95.

Based on the facts alleged in this Complaint, Plaintiff is entitled to special damages in the amount at least $1,000 to include the specific cost of his firearms and ammunition that were confiscated.

## **RELIEF**

WHEREFORE, Mr. Zhao respectfully requests the following relief:

1.  That process issue and service be had on each Defendant;

2.  That Plaintiff be immediately reinstated as a student at Virginia Tech to regain his F-1 Student Visa immigration status on the condition that he transfer to a different university;

3.  That Plaintiff immediately be granted another hearing regarding the Student Conduct violations against him so he has an opportunity to be heard;

4.  That Defendant Virginia Tech rewrite its Student Conduct policy to reflect general standards of procedural due process;

5.  That Defendant McClain drop all pending criminal charges against Mr. Zhao and admits the charges are false;

6.  That judgment be granted in favor of the Plaintiff against the Defendants for the injuries of Plaintiff;

7.  That Plaintiff recover compensatory damages including pain and suffering and all other expenses in an amount to be determined at trial;

8.  That Plaintiff recover all costs of this litigation;

9.  That a jury trial be had on all issues so triable;

10. That Plaintiff recover a judgment against Defendants for punitive damages; and,

11. That Plaintiff receives other and further relief as this Court deems just and proper.

Respectfully submitted this 25th day of April 2018,

<u>/s/ Mario B. Williams</u>
Mario B. Williams (VSB # 91955)

NEXUS DERECHOS HUMANOS ATTORNEYS, INC.
44 Broad St. NW, Suite 200
Atlanta, GA 30303
404-254-0554/ 703-935-2453 (fax)
mwilliams@ndhlawyers.com