IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **YUNSONG ZHAO**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 7:18-CV-189 |
| **VIRGINIA POLYTECHNIC INSTITUTE** | ) | |
| **AND STATE UNIVERSITY** | ) | |
| **("VIRGINIA TECH")**, | ) | |
| **ROHSAAN SETTLE**, | ) | |
| in his individual and official capacities, and | ) | **JURY TRIAL DEMANDED** |
| **DAVID CLUBB**, | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Yunsong Zhao, pursuant to this Court's Order giving leave to

amend Plaintiff's First Amended Complaint (ECF 63), files this Second Amended

Complaint against the named Defendants under 42 U.S.C. § 1983 with respect to

vindicating his rights guaranteed by the Fourth, Fifth, and Fourteenth

Amendment of the U.S. Constitution.

## INTRODUCTION

This case centers on the rights of a foreign-exchange student who simply

chose the wrong university to be Asian and like guns. One would think that rural

Virginia would be accepting of a 19-year-old kid who wanted to shoot guns like

the Americans he grew up watching in the movies; unfortunately for Yunsong Zhao, a tragedy that occurred ten years prior to his admission to Virginia Tech ruined his chances to bond with the locals over firearms.

Multiple agencies at Virginia Tech went out of their way to marginalize Mr. Zhao; the Office of Student Conduct and the Cranwell International center, at the behest of the Virginia Tech police department and members of the Virginia Tech Threat Assessment Team, went too far in this case. Both departments deprived Mr. Zhao of his vested property interest in his enrollment (student status) at Virginia Tech, as well as his vested property interest in his lawful stay in the United States facilitated by his F-1 student visa. Because the Office of Student Conduct expelled Mr. Zhao without giving him a meaningful opportunity to be heard, to include a chance to present a case in his own defense; because the Cranwell International Center , through its Director (Defendant Clubb), effectively terminated Mr. Zhao's student visa without even giving him notice or a meaningful opportunity to be heard, and because Defendants put Mr. Zhao on Interim Suspension and terminated his housing status without giving him a meaningful opportunity to be heard, to include a chance to present a case in his own defense; Mr. Zhao (1) lost his vested status as a Virginia Tech Student and (2) has been incarcerated for eight months, while facing the very real possibility of deportation.

## JURISDICTION AND VENUE

### 1.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(4), under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) and L.R. 2(b) because (1) a substantial part of the events and omissions giving rise to Mr. Zhao's claims occurred within this District and Division and (2) Defendants reside and transact business in this District and Division.

## ADMINISTRATIVE EXHAUSTION

### 2.

Mr. Zhao has exhausted all available administrative remedies through the Office of Student Conduct prior to the filing of this Complaint.

## PARTIES

### 3.

At all times relevant to this Complaint, Plaintiff Yunsong Zhao was lawfully residing in the United States on an F-1 Student Visa and was a student at Virginia Tech. Mr. Zhao, at all times relevant to this Complaint, had clearly established legal rights under federal law and the United States Constitution. Mr. Zhao submits himself to the jurisdiction of this Court and is entitled to bring this action under federal law for declaratory relief and all general, special, compensatory, punitive, and any other permissible damages.

3

4.

At all times relevant to this Complaint, Defendant Virginia Polytechnic Institute and State University ("Virginia Tech") was a public university incorporated by statute in the Commonwealth of Virginia, County of Montgomery, and City of Blacksburg. Also, at all times relevant to this Complaint, Virginia Tech was the public employer of Defendants McClain, Settle, and Clubb. Virginia Tech's policies failed to provide Mr. Zhao with due process regarding his Student Conduct hearing and subsequent dismissal from the university.

Mr. Zhao is using 42 U.S.C. § 1983 as the vehicle to sue Virginia Polytechnic Institute and State University regarding its failure to protect Mr. Zhao's constitutionally guaranteed right to procedural due process. Virginia Tech may be served by serving its President, personally, at his place of employment.

5.

At all times relevant to this Complaint, Defendant Rohsaan Settle was a United States citizen, Virginia resident, and the Director of Student Conduct at Virginia Tech. Mr. Settle wrongfully denied Mr. Zhao a meaningful opportunity to be heard at a Student Conduct hearing, by ensuring that a Mr. Zhao's hearing was held in Mr. Zhao's absence: Mr. Zhao was known to be incarcerated at the

time of the hearing. At all relevant times to this Complaint, Mr. Settle blatantly ignored Mr. Zhao's established due process rights, to include holding a hearing while knowing Mr. Zhao could not attend said hearing, and never attempting to re adjust the hearing date so that Mr. Zhao could attend a hearing that affected his entire life. Mr. Zhao is using 42 U.S.C. § 1983 to sue Mr. Settle in his individual and official capacities. Mr. Settle may be served personally at his place of employment.

6.

At all times relevant to this Complaint, Defendant David Clubb was a United States citizen, Virginia resident, and the Director of the Cranwell International Center at Virginia Tech. At Mr. Clubb's express direction, Mr. Zhao's SEVIS record was terminated at Virginia Tech, terminating his student visa, without giving Mr. Zhao any notice, nor any meaningful opportunity to be heard. Mr. Zhao has a property interest in (1) his student status at Virginia Tech, as well as in (2) his student visa allowing him to be a student in the United States; thus, Mr. Clubb could not deprive Mr. Zhao of his property without due process. Mr. Zhao is using 42 U.S.C. § 1983 to sue Mr. Clubb in his individual and official capacities. Mr. Clubb may be served personally at his place of employment.

5

## STATEMENT OF FACTS

**I.     David Clubb effectively terminated Mr. Zhao's student visa without notice or a meaningful opportunity to be heard.**

7.

Mr. Zhao arrived in the United States from his home country, China, in July of 2017 to study at Virginia Tech University. He began those studies on July 5, 2017.

8.

Mr. Zhao was required to have full time enrollment (12 academic hours per semester) at Virginia Tech and Mr. Zhao registered for a full-time course load in compliance with federal law.

9.

The relevant CFR section, 8 C.F.R. § 214.2(f)(5)(i), requires students in the United States on a valid F-1 visa to maintain a "full course of study." According to the regulation, a "full course of study" is achieved by:

> (B) Undergraduate study at a college or university, certified by a school official to consist of at least twelve semester or quarter hours of instruction per academic term in those institutions using standard semester, trimester, or quarter hour systems, where all undergraduate students who are enrolled for a minimum of twelve semester or quarter hours are **charged full-time tuition** or are considered full-time for other administrative purposes, or its equivalent (as determined by the district director in the school approval process), except when the student needs a lesser course load to complete the course of study during the current term;

6

10.

When registering for the Spring 2018 semester at Virginia Tech, Mr. Zhao registered for 13 credit hours, meeting both the federal requirement and the Virginia Tech requirement that he register for more than 12 credit hours as a full-time student.

**1. Virginia Tech cancelled a class Mr. Zhao was registered for.**

11.

By no fault of his own, the Criminology class Mr. Zhao registered for was cancelled by Virginia Tech.

12.

The first notification that the class was cancelled was sent via email from Brenda Husser on January 12, 2018; however, classes had not yet commenced for the Spring semester at that time. In that email and subsequent emails about the cancellation, instructions were given on how to register for another section of the same class.

13.

The first day of classes in the Spring semester was January 16, 2018.

14.

Due to a timing error with the cancellation request, the registrar did not cancel the class until Tuesday, January 16—the first day of classes in the Spring

semester. This means that the class was open and active for students to register for the cancelled section up until Tuesday, January 16.

15.

Notice of the class cancellation error was sent to students in an email dated January 20, 2018—four day after the Start of spring semester classes. That email was sent at 10:24 AM.

## 2. Mr. Zhao took the appropriate steps to add another section of the class while the add/drop period was still open.

16.

After receiving that email, on January 20, 2018, Mr. Zhao replied with his Student Identification number and the section number of the additional section of the class, pursuant to the instructions included in the notification emails, at 11:44 AM on that same day.

17.

On Monday, January 22, 2018, Mr. Zhao received a reply email to his request to add another section of Criminology, letting him know that Ms. Husser could not add him to the section because he had a registration hold on his account.

18.

The designated add/drop period ended on January 22, 2018, the same day that Ms. Husser told Mr. Zhao that he could not add him to the subject section because of a registration hold.

19.

Mr. Zhao took appropriate steps to find out the source of the registration hold—his full tuition had not been paid yet—and contacted his parents to remedy the non-payment.

20.

Upon receipt of his full tuition payment, sent from Mr. Zhao's parents in China, Virginia Tech removed the registration hold from Mr. Zhao's account on January 28, 2018. Thus, at this time, Mr. Zhao had paid full-time tuition mindful of the definition of Full-time student cited in above-paragraph 10, which takes into account full time tuition payment.

21.

Once he had notification that the registration hold was removed, Mr. Zhao emailed Ms. Husser that day to ask if he could still be added to the class.

22.

The following day, Monday, January 29, Ms. Husser sent Mr. Zhao instructions to late force-add the Criminology section to his schedule, mindful that Virginia Tech had taken Mr. Zhao's full-time tuition payment.

**3. Virginia Tech arrested Mr. Zhao before he could complete the final step of adding the additional class.**

23.

On the day that Mr. Zhao was sent instruction to force add a class in order that his credit hours matched his full-time tuition payment, the Virginia Tech police arrested him. Therefore, on the morning of January 29, 2018, he could not fill out the late force-add paperwork and add the class due to his arrest.

**4. Virginia Tech, at the direction of David Clubb, denied Mr. Zhao procedural due process by notifying the federal government that Mr. Zhao was not taking enough credit hours without giving him any notice.**

24.

According to his Student and Exchange Visitor Information System ("SEVIS") account, Virginia Tech notified the Department of Homeland Security that Mr. Zhao had dropped below full-time credit hours on January 29, 2018, just before 5 PM—after—but on the same day—Mr. Zhao had been given instructions by Virginia Tech with respect to force-adding his class due to Mr. Zhao's full time tuition being paid and Virginia Tech forcing Mr. Zhao below full time hours by Virginia Tech cancelling Mr. Zhao's criminology class.

25.

The termination code that appears on Mr. Zhao's SEVIS information is "unauthorized drop below full course," mindful that Virginia Tech, not Mr. Zhao, dropped him below his full credit hours minimum.[1]

26.

The Director of the Cranwell International Center at Virginia Tech, David Clubb, audited the international students' credit hours on January 25, 2018. According to Mr. Clubb, Mr. Zhao and three other students were below twelve credit hours, flagging them in the system.

27.

Mr. Clubb did not notify the federal government on January 25, the day he conducted the audit, that Mr. Zhao had dropped below full-time credit hours, even though Virginia Tech has represented that "Clubb's only involvement was to fulfill his obligation required by U.S. Immigration and Customs Enforcement **to immediately report Plaintiff's noncompliance** in SEVIS."[2]

---

[1] Exhibit 1, "SEVIS Record Log."
[2] ECF 15, pg. 4.

28.

Mr. Clubb did not notify the federal government that Mr. Zhao was below full-time credit hours until January 29. This is the same day that Mr. Zhao was arrested by the Virginia Tech police.

29.

The Cranwell International Center, at the direction of David Clubb, only terminated Mr. Zhao's SEVIS record immediately after Mr. Clubb received a call from the Virginia Tech police.

**5. Virginia Tech had twenty-one days to notify the government, yet they waited less than a week to terminate Mr. Zhao's visa.**

30.

8 C.F.R. § 214.3(g) states that schools have twenty-one days to notify the federal government of a change in a student's compliance with the F-1 visa requirements. The exact language is as follows:

(g) Recordkeeping and reporting requirements:

   (2) Reporting changes in student and school information.

      (i) Schools must update SEVIS with the current information within 21 days of a change in any of the information contained in paragraphs (f)(1) and (h)(3) of this section.
      (ii) Schools are also required to report within 21 days any change of the information contained in paragraph (g)(1) or the occurrence of the following events:
      (A) Any student who has failed to maintain status or complete his or her program;

31.

Twenty-one days after the add/drop period ended—essentially when Virginia Tech had a reasonable expectation that most students' schedules were finalized—would have been February 12, 2018.

32.

Mr. Clubb did not direct the Cranwell Center to terminate any other student's SEVIS record on January 29 when he directed Mr. Zhao's record to be terminated. The other students were terminated at later points during the 21-day period. Mr. Clubb explained that "they were terminated at different points between January 29 and February 12, I believe it is, which was the end of the 21-day period."[3]

33.

Mr.  Clubb did not terminate these other three students on January 29 because he did not receive calls concerning them from the Virginia Tech police department.

34.

Neither Mr. Clubb, nor any other person from the Cranwell International Center, made any effort to contact Mr. Zhao to alert him that Virginia Tech was going to contact the federal government to terminate his visa.

---

[3] Exhibit 2, Dep. of David Clubb, pg. 82, lines 22–25.

35.

Cranwell usually alerts students before terminating their SEVIS records to give them a chance to remedy the situation. When asked, "[b]efore you terminate a student's SEVIS record, do you notify them?" Clubb responded "[y]es."[4] He further stated that "it is our practice to try to give students as much notice as possible about their obligations under the regulations."[5]

36.

Cranwell even has a form email that it sends to students to notify them that their SEVIS records are at risk of being terminated. This email tells students "*You must take immediate action to ensure your SEVIS record and underlying immigration status remains valid.*" (Emphasis in original).[6] This email, though the template exists and is used at the Cranwell center, was not sent to Mr. Zhao prior to the termination of his SEVIS record.

37.

The CFR explains further what is required of students in maintaining their full-time schedule. "The student is considered to be maintaining status if he or she is making normal progress toward completing a course of study." 8 C.F.R. §

---

[4] Exhibit 2, Dep. of David Clubb, pg. 45.
[5] Id. at 46.
[6] Exhibit 3, "Termination Emails."

214.2(f)(5)(i). Paying full time tuition and enrolling full time is making normal

progress toward completing a course study.

38.

Department of Homeland Security guidance documents explain that a

termination of status based on a fall below credit hours is when the student ***did***

***not enroll*** in a full course of study.[7]

**6. The termination of a student's SEVIS record is a disciplinary action based on a violation of a university policy, which triggers the Virginia Tech Code of Student Conduct; Mr. Zhao had no notice or hearing, however, before Virginia Tech effectively cancelled his student visa.**

39.

Relevant excerpts from the Hokie Handbook regarding violations of laws

as well as the code of conduct and the opportunity to have a hearing before

Student Conduct are as follows:

- "Students and student organizations will be considered for disciplinary

  action whenever violations are committed on university property." (pg. 9)

- "When conduct violates both civil law and the policies found in University

  Policies for Student Life and the Student Code of Conduct, disciplinary

---

[7] "User Manual for DHS HQ Users, DHS Officers, DHS Inspectors, DHS SRC Users, and SEVP PICS Officers of the Student and Exchange Visitor Information System," U.S. DEPARTMENT OF HOMELAND SECURITY, Version 6.23, pg. 59 (December 4, 2015), available at https://www.ice.gov/sites/default/files/documents/Document/2015/sevis-manual-dhshq.pdf

action may be taken by the university, irrespective of and separate from action taken by civil authorities." (pg. 10)

- "Disciplinary action may be taken by the university against any act constituting a violation of the law when the act is contrary to the university's interests as an academic community." (pg. 9)

- "Violations of these policies are adjudicated through the University Student Conduct System **and/or the appropriate responsible department."** (pg. 8) (emphasis added).

- "The following student conduct sanctions may be imposed upon a student or student organization for violation of university policy." (pg. 35)

- Dismissal is defined as when "[s]tudent is notified that they are permanently separated from the university." (pg. 36)

- "When the outcome of a formal hearing results in suspension, dismissal or denial of athletic privileges/housing/network access, the charged student/organization may appeal." (pg. 14)

40.

The Cranwell International Center gives the following information to international students regarding maintaining full-time status:

- "Exceptions to full-time enrollment can be approved only by a DSO at the Cranwell International Center. **Do not drop before receiving prior**

16

**authorization from an Immigration and Advising Specialist at Cranwell."**[8]

- Reduced Course Load (Academic): This form must be completed by students who wish to drop below full-time (12 credits) during the academic term. **Students may not drop below full-time prior to approval from the Cranwell International Center.**[9]

- "[A]ll international undergraduate students should be directed to Cranwell International Center for proper immigration counseling, as each student's case is different and carries heavy implications if incorrectly advised."[10]

- "**IMPORTANT: Violations of any of these rules and/or regulations may result in the termination of the student's SEVIS record!**"[11]

- "Full Time Enrollment and Online Credit Hour Policy: F and J visa holders must be enrolled full-time each semester. For all undergraduate students,

---

[8] "Maintaining Your F-1 Status," CRANWELL INTERNATIONAL CENTER AT VIRGINIA TECH, *available at* https://www.international.vt.edu/immigration/students/immigration_regulations/maintaining-legal-f-1-status.html (emphasis added).

[9] "Forms," CRANWELL INTERNATIONAL CENTER AT VIRGINIA TECH, *available at* https://www.international.vt.edu/immigration/forms.html (emphasis added).

[10] "Departmental Resources," CRANWELL INTERNATIONAL CENTER AT VIRGINIA TECH, *available at* https://www.international.vt.edu/immigration/departmental-resources.html."

[11] Id. (emphasis in original).

this is 12 credits. Of those 12 credit hours, at least 9 must be in the classroom. Any course work in addition to 9 residential credit hours may be taken online[.]"[12]

41.

The above guidance Cranwell provided does not apply to Mr. Zhao because he did not drop the class to try to pursue a reduced academic course load. Mr. Zhao was following all relevant law and Virginia Tech policy. The class was dropped by no fault of his own and he was taking the appropriate steps to return to full-time status.

42.

Cranwell International Center spends one hour during orientation covering what is required of international students to maintain their visas while at Virginia Tech. This short training does not cover exceptions or extenuating circumstances.

43.

If Mr. Zhao had been given a hearing before Virginia Tech had terminated his status, he could have easily shown that he was in compliance with both federal regulations and Virginia Tech guidance.

---

[12] Id.

44.

Further, the only notice Mr. Zhao received from Cranwell regarding maintaining a full-time course of study was sent via email on January 10, 2018, and at that time, and this is significate: *Mr. Zhao was still enrolled in 13 credit hours*.

45.

Mr. Zhao received no other communication from Cranwell once his credit hours changed, even though Virginia Tech notifies students prior to terminating their records in SEVIS: David Clubb says in his affidavit: "We run routine reports; we have to know everyone that has status; they've got enough credit hours; they've got 13. We ran a report. When we ran it, there were several students on it. We wait a few days because there is the drop/add thing. We ran it on the 25th. We wait a few days after that. **Then we send out the notices and tell them, you need to be right**."[13] Virginia Tech mentions this notice again, "they send out the notice to folks before they terminate to see if anything gets right; and then they terminate."[14] This admitted policy (informal or otherwise) of notifying International Students—so they can 'be right'—prior to terminating their SEVIS status contributes to Mr. Zhao procedural due process right in said

---

[13] Preliminary Injunction Hearing Transcript, pg. 31, lines 1–8 (emphasis added).
[14] Id. at 77, lines 1–3.

notice and meaningful opportunity to be heard prior to his SEVIS status being terminated.

46.

No one from Cranwell ever checked with Mr. Zhao to see if he was trying to add another class to return to full-time credit hours. Mr. Zhao had no opportunity to stop the termination of his status, even though he was taking all appropriate steps to add another class at the time of his arrest, and even though he paid full-time tuition prior to his status being taken.

47.

Virginia Tech provided no documentation to Mr. Zhao in jail that his immigration status had been terminated. The Cranwell center emailed his Virginia Tech email account, which Mr. Zhao could not access from jail.

48.

At the time of his arrest, Mr. Zhao believed fully that he was still a student in good standing at Virginia Tech.

49.

Mr. Zhao was arrested at 11:42 AM and his SEVIS record was terminated at 4:59 PM on January 29, 2018. Thus, only hours after being arrested, Virginia Tech terminates Mr. Zhao's SEVIS record—only after the Virginia Tech police spoke with David Clubb directly.

20

50.

Again, it is at David Clubb's express direction that Cranwell terminates

Mr. Zhao's SEVIS record, effectively terminating his right to lawfully remain in

the United States.

51.

In the email from the Cranwell center notifying Mr. Zhao of his SEVIS

record termination, it was explained that Mr. Zhao could still return to Virginia

Tech the following semester.

**7. By Virginia Tech's own admission, students without visa status can pursue an education at Virginia Tech; therefore, Virginia Tech claiming that Mr. Zhao's termination of his F-1 visa ended his enrollment is misleading.**

52.

At the June 18, 2018 hearing, Mr. McClanahan explained, on behalf of

Virginia Tech, that "we have lots of students at Virginia Tech who are not in the

country legally, just do not have legal status."[15]

53.

In its brief in opposition to Plaintiff's Motion for Preliminary Injunction

(ECF 15), Virginia Tech explains that "in the regular course of business, [David

Clubb] made an entry in the database of the Student Exchange and Visitors

---

[15] Id., pgs. 35–36, lines 25–2.

Information System (SEVIS) reflecting the Plaintiff's hourly academic course load had dropped below the federally required threshold. This action resulted in the Plaintiff's SEVIS record being terminated at Virginia Tech."[16]

**8. Virginia Tech knew that the effect of terminating Mr. Zhao's SEVIS record was that his visa would be terminated.**

54.

Virginia Tech admits that the action by David Clubb terminated Mr. Zhao's enrollment at Virginia Tech, when it stated "Clubb lacked the discretion or authority to retain Plaintiff as a student." Thus, Clubb's action of reporting Mr. Zhao to SEVIS terminated his visa, and Virginia Tech knew that Mr. Zhao's enrollment would therefore become invalid.

55.

Even if Virginia Tech takes no responsibility for terminating Mr. Zhao's visa, by their own admission, Virginia Tech could have retained him as an undocumented student. However, just in case, Virginia Tech held a Student Conduct hearing in Mr. Zhao's absence, expelling him, to finalize Mr. Zhao's departure from Virginia Tech.

---

[16] ECF 16, pg. 4 (internal citations omitted).

56.

There is no reason to believe that Mr. Zhao's expulsion was based on anything except his Student Conduct proceedings. Further, Virginia Tech even represented that fact to the court: "He was not – correct. But he was not dismissed from Virginia Tech for being out of compliance with SEVIS, with the immigration status, because we have students who are out of compliance. We just have a duty to report."[17]

57.

Again, Virginia Tech's duty to report was 21-days; instead, choosing expressly to terminate Mr. Zhao's status before terminating even other students found to be out of compliance from the same audit that revealed Mr. Zhao's too-few credit hours, David Clubb directed the Cranwell center to terminate Mr. Zhao's record only five days into that period. Only five days, **when Mr. Zhao was taking all necessary and appropriate steps to add another class to regain his full-time credit hours that matched his full-time tuition payment.**

---

[17] Preliminary Injunction Hearing Transcript, pg. 37, lines 5–9.

**9. As a result of David Clubb directing his staff to terminate Mr. Zhao's SEVIS record at Virginia Tech, though Mr. Zhao was in full compliance with the law, ICE issued a Notice to Appear ("NTA") to Mr. Zhao on January 31, 2018 because he no longer had a valid visa to be present in the United States.**

58.

Mr. Zhao was issued a Notice to Appear ("NTA") from the Department of Homeland Security on January 31, 2018.[18]

59.

The only charge on Mr. Zhao's NTA states that "[y]ou have been admitted to the United States, but are removable for the reasons stated below," explaining that "[y]ou have failed to maintain your status, when you failed to maintain status as a full time student."

60.

Significantly, a Virginia state court permitted Zhao to post bond—and be released—based on his alleged criminal charges (alleged possession of an assault weapon when not a U.S. citizen or Lawful Permanent Resident); and after being released: Mr. Zhao was immediately transferred to ICE custody, where he remains to this day.

---

[18] Exhibit 4, "Notice to Appear."

61.

David Clubb's decision to terminate Mr. Zhao's SEVIS record after a call from the Virginia Tech police is the only reason that Mr. Zhao is in ICE custody.

62.

The only charge that Mr. Zhao is facing from the Department of Homeland Security is the lapse of his student visa.

63.

Mr. Zhao was denied bond in his immigration proceedings, and thus remains detained at Farmville Detention Center, but the denial of that bond has zero to do with the reason Mr. Zhao is in immigration custody—if Mr. Zhao regains his SEVIS status then there is no basis to keep him in immigration custody based on the documented evidence in this case thus far.

64.

The only criminal charge that is pending—that Mr. Zhao used a rifle equipped with a 30-round magazine—is based on zero physical evidence.

65.

Mr. Zhao's immigration bond was denied based solely on the packet of unsubstantiated information presented to DHS by the Virginia Tech police.

66.

Again, the packet of information stating that Mr. Zhao is allegedly a danger to the community has no allegations of violent behavior because Mr. Zhao has never exhibited any violent behavior.

67.

The only information that the Judge relied on in denying Mr. Zhao's bond is that he possessed two firearms and ammunition for those firearms and exhibited so-called "suspicious behavior."[19]

68.

Again, there is no evidence of Mr. Zhao's criminal history because, other than the pending criminal charge substantiated by no actual, physical evidence, Mr. Zhao does not have criminal history.

69.

There are no allegations that Mr. Zhao has ever used his firearms outside of recreational use at a verified shooting range.

---

[19] Exhibit 5, "Bond Memorandum and Order," Hon. Helaine R. Perlman, June 6, 2018.

70.

The packet of information stating that Mr. Zhao is allegedly a danger to the community contains an article solely about the 2007 Virginia Tech mass shooting, also committed by an Asian man.

71.

Other than also being born in an Asian country, Mr. Zhao has no other connections to Seung Cho, the shooter who caused a tragedy at Virginia Tech in 2007.

72.

The inclusion of a news article—totally unrelated to Mr. Zhao or any evidence connecting Mr. Zhao to any crime—as a submission of "evidence" to the immigration court simply shows Virginia Tech's obvious effort to profile Mr. Zhao, while having nothing of merit whatsoever to back up their comparison.

73.

After Mr. Zhao was denied bond in his immigration proceedings, he obtained new legal counsel in an effort to present further evidence that he is not a danger to the community.

74.

Mr. Zhao's attorney filed an appeal of his bond determination, which is pending before the Board of Immigration Appeals.

**10. If Mr. Zhao is issued a new I-20 and a new SEVIS record at Virginia Tech, his only immigration charge will be moot.**

75.

The only allegation against Mr. Zhao is that his student visa was terminated, meaning that, if Virginia Tech reinstates Mr. Zhao in full—reissues him a new I-20 and renews his SEVIS record—all immigration charges against Mr. Zhao will be dropped.[20]

76.

The federal government has the ultimate discretion of whether to accept the new I-20 and reinstate Mr. Zhao's F-1 visa in full. However, if Virginia Tech is compelled to reinstate Mr. Zhao *based on the fact that the termination of his SEVIS record was unlawful*, there is no reason for the federal government not to accept the new I-20—from the same institution that terminated the SEVIS record in the first place—and reinstate Mr. Zhao's F-1 visa in full.

77.

Therefore, if Mr. Zhao regains F-1 visa status, there is no basis for the Department of Homeland Security to hold him.

78.

Mr. Zhao was already granted bond on his criminal charge—quite a low bond ($2,500) due to the lackluster "evidence" presented by the Commonwealth and

---

[20] See Exhibit 4, "Notice to Appear."

noted as such by the Judge—**therefore, once Mr. Zhao defeats his immigration charge, he can regain his liberty.**

## II. Virginia Tech did not give Mr. Zhao due process again when Student Conduct denied Mr. Zhao an opportunity to be heard.

### 1. Mr. Zhao's first run-in with Student Conduct was explained as "no big deal."

79.

Virginia Tech adheres to a Code of Student Conduct. That Code is enforced by the University Student Conduct System.

80.

Mr. Zhao's first run-in with the Student Conduct system was a conversation with Officer Micah Pasquarell of the Virginia Tech Police on January 6, 2018.

81.

While waiting to pick up a friend, Mr. Zhao was parked outside a residence hall. Officer Pasquarell drove past Mr. Zhao waiting in the car, saw he was in the car—knowing who he was because Mr. Zhao was driving the Crown Victoria—and made a U-turn to come speak with Mr. Zhao. Officer Pasquarell began the conversation by telling Mr. Zhao that he was not under arrest and that Officer Pasquarell was just seeing what Mr. Zhao was up to.

82.

After running Mr. Zhao's ID, Officer Pasquarell asked Mr. Zhao if he had any weapons in his car. Initially, Mr. Zhao answered that he did not have any weapons, but he then realized that he had a knife in the backseat of his car. Mr. Zhao proceeded to tell Officer Pasquarell that he did have a knife, which Officer Pasquarell could see in the back seat of the car.

83.

The Virginia Tech Code of Student Conduct prohibits knives with blades longer than 4 inches **either as "[an] instrument of combat" or "for the purpose of inflicting or threatening bodily injury."[21]**

84.

During the hearing on June 18, 2018, while under oath, Mr. Zhao testified that he did not have the weapon for combat, nor to threaten or inflict bodily injury.[22]

85.

Being from China, Mr. Zhao did not know the measurement of the knife in inches. In China, they use centimeters as their system of measurement.

_____

[21] "Weapons," HOKIE HANDBOOK 35.
[22] Preliminary Injunction Hearing Transcript, pg 49, lines 12-17.

86.

Mr. Zhao told Officer Pasquarell that the knife "was vaguely 10 to 12 centimeters." 10 centimeters is 3.93 inches; 12 centimeters is 4.72 inches.

87.

Officer Pasquarell did not seize the blade, though he did tell Mr. Zhao that he is not allowed to have the knife on campus; however, he also told Mr. Zhao not to worry about his possession of the knife because it was not a big deal. Officer Pasquarell reported Mr. Zhao's possession of the knife to Student Conduct.

88.

"And once he saw the knife, he told me that, said, well, he said 'you can't have a knife of this size on campus,' but not to be worried because it's not illegal to have this knife, nothing to be worried about . . . ."[23]

89.

"I thought it was nothing serious, as Officer Pasquerel [sic] told me."[24]

90.

Student Conduct scheduled a hearing for Mr. Zhao about his possession of the knife on campus for February 2, 2018.

---

[23] Id. at 50-51, lines 24-4.
[24] Id. at 51, lines 9-10.

91.

Mr. Zhao met with Kyle Rose, a Student Conduct Coordinator, on Friday, January 26, 2018 for a pre-hearing meeting regarding his violation of the Code of Student Conduct by possessing the knife on campus. Mr. Rose told Mr. Zhao that the most serious sanction he would probably face for possessing a knife on campus was suspension **but told Mr. Zhao not to be worried** since it was his first offense. Mr. Rose told Mr. Zhao that he would most likely receive no sanction for this infraction.

92.

"And Kyle Rose told me that it was nothing serious, nothing too serious … he said the worst case scenario would be a suspension, and most likely I would receive no sanction at all."[25]

## 2. Mr. Zhao was determined to be a danger to the University though he had committed no acts of violence or shown any violent tendencies.

93.

Mr. Zhao was arrested by the Virginia Tech Police on January 29, 2018 — days prior to his Student-Conduct Hearing.

---

[25] Id. lines 17-19.

94.

The Virginia Tech Police executed the search warrant on Mr. Zhao's property after his arrest. They did not find any weapons in his residence hall or in the red F-150. In his Crown Victoria, they find three 20-round magazines for an AR-15 and the same knife with a blade 10 to 12 centimeters in length.

95.

**It is not a violation of the Code of Student Conduct to have ammunition on campus.** Ammunition is only expressly prohibited to be in the residence halls. The Code of Student Conduct states: "Unauthorized possession, storage, or control of firearms, weapons, **on university property**, including storing weapons in vehicles on campus as well as in the residence halls. Furthermore, **ammunition** cannot be stored in any residence halls on campus." (Emphasis in original).[26]

96.

As already stated, the knife is a violation of the Student Code of Conduct **only if it is used as an instrument of combat or "to threaten or inflict bodily harm."**

_____

[26] "Weapons," HOKIE HANDBOOK 34–35.

33

97.

The Office of Student Conduct placed Mr. Zhao on interim suspension from the University after finding the knife and ammunition in the trunk of his Crown Victoria. Interim suspension includes a ban from being present on the Virginia Tech campus. The interim suspension policy reads in part, "[t]he university retains the authority to impose an interim (immediate) suspension if such action is necessary **to preserve the safety of persons or property**. . . if the situation is sufficiently serious, the Threat Assessment Team or the associate vice president for student affairs or his/her designee will determine if an interim suspension is appropriate." (emphasis added).[27]

98.

The Threat Assessment Team is a group of university officials, including university police, created in response to the 2007 mass shooting on the Virginia Tech campus.

99.

The 2007 shooter on the Virginia Tech campus was also an Asian man.

100.

Since they issued Mr. Zhao an interim suspension, the Threat Assessment Team had deemed him a danger to people or property on the Virginia Tech

---

[27] "Interim Suspension Policy," HOKIE HANDBOOK 37–38.

campus. The Team decided this based on finding a small knife in Mr. Zhao's car two times. **There are no allegations of Mr. Zhao using the knife for any purpose.**

### 101.

Mr. Zhao has no history of violence. Both his guns were stored in the student gun locker at the time of his arrest and subsequent interim suspension.

### 102.

Again, there are no allegations of Mr. Zhao threatening or committing any acts of violence at any time—because he has not threatened or committed any act of violence.

### 103.

As a result of being placed on interim suspension—and being determined to be a "danger to the university"—Mr. Zhao was evicted from his on-campus housing in Cochrane Hall by the Director of Housing and Residence Life at Virginia Tech.

### 104.

At no time was Mr. Zhao given a hearing to challenge either his interim suspension or ban from on-campus housing.

105.

There is no evidence of Mr. Zhao harming a person or property on Virginia Tech's campus to warrant an interim suspension—again, because Mr. Zhao has not injured a person, threatened to injure a person, nor harmed any property during his tenure at Virginia Tech.

### 3. Virginia Tech Refused to Reschedule Mr. Zhao's Student Conduct Hearing

106.

After his arrest on January 29, Student Conduct alerted Mr. Zhao that both instances of possessing the knife on campus would be combined into one hearing. That hearing was already scheduled for February 2, 2018.

107.

In the packet of information brought to Mr. Zhao in Montgomery County Jail, was a letter from the Office of Student Conduct, which explained "[i]f you feel that you need more time to review this new information, **please contact Kyle Rose or [Ennis McCrery] at [phone number] to discuss hearing date options**. If we do not hear from you, we will proceed with the hearing at the scheduled time (Friday, February 2nd, at 2 pm)." (emphasis added).

108.

This packet also alerted Mr. Zhao that he was banned from campus and evicted from his on-campus housing assignment.

109.

The packet did not alert Mr. Zhao that his SEVIS record at Virginia Tech had been terminated. Mr. Zhao still had no idea that Virginia Tech—at the behest of the police—had cancelled his student visa.

110.

Relying on the letter from the Office of Student Conduct and following its express instructions, Mr. Zhao called Kyle Rose from the Montgomery County Jail with the expectation that Kyle Rose would reschedule his Student Conduct hearing.

111.

Contrary to the representation made to Mr. Zhao in the letter from the Associate Director from Student Conduct, Kyle Rose did not even possess the authority to reschedule Mr. Zhao's hearing.

112.

Ms. Zhao's call, from jail, to Mr. Rose was Mr. Zhao's last free phone call from the jail. Mr. Zhao explained to Mr. Rose that he was incarcerated and would not be able to attend the hearing. Mr. Zhao had no money to make additional phone calls.

113.

Student Conduct, including Defendant Settle, did not reschedule the hearing.

114.

Student Conduct held the hearing in Mr. Zhao's absence, though they had previous knowledge of his inability to attend.

115.

Further, Virginia Tech has maintained that the opportunity given to Mr. Zhao to submit a written statement was presented and that Mr. Zhao did not take it.

116.

Again, Mr. Zhao was in jail. He did not have any money. Until his mother was able to visit Mr. Zhao from China **after the Student Conduct hearing had already occurred**, he did not have the monetary support to send a letter to Virginia Tech.

117.

Even if Mr. Zhao had been able to submit a written statement, he still did not have the meaningful opportunity to rebut the evidence presented against him by Virginia Tech, and, since the hearing was held in his absence, nor would he have been able to ask questions of his accusers.

38

118.

English is not Mr. Zhao's first language.

**4.  In his absence, Mr. Zhao was dismissed from Virginia Tech.**

119.

Mr. Zhao was found responsible for "Failure to Comply with a University Official" and "Unauthorized Possession of a Weapon on Campus" in reference to the January 6, 2018 incident where the knife was in the backseat of his car.

120.

Mr. Zhao was found responsible for another count of "Unauthorized Possession of a Weapon on Campus" in reference to the police finding the knife in Mr. Zhao's car upon executing the search warrant.

121.

Mr. Zhao was found responsible for a second count of "Failure to Comply with a University Official" for failing to remove the knife from his car before the Virginia Tech police executed the search warrant after Mr. Zhao's arrest. However, as previously stated, Officer Pasquarell also told Mr. Zhao that his possession of the knife was not a big deal and that Mr. Zhao should not be worried.

122.

Student Conduct imposed its sanction on February 5, 2018, which was dismissal from the university.

### 5. Student Conduct denied Mr. Zhao's only available appeal.

123.

The University Student Conduct System only allows one appeal of all formal hearing decisions. "Appeals must be based only on the following grounds: (1) denial of procedural guarantees, (2) significant and relevant new evidence that was not available at the time of the hearing, and/or (3) sanctions/findings that are unduly harsh or arbitrary. Appeal requests will be denied in cases not having sufficient grounds in one or more of these areas."[28]

124.

Mr. Zhao timely submitted an appeal of his dismissal from Virginia Tech claiming all three grounds for appeal. He asserted that (1) he was not given any procedural guarantees because Student Conduct refused to reschedule his hearing; (2) he could have been in possession of new significant and relevant evidence because he was not told what evidence was provided and held against him; and, (3) his sanction, based on possession of a small knife on campus two times, was unduly harsh.

---

[28] "Student Conduct Formal Hearing Appeals," The University Student Conduct System.

125.

Student conduct denied Mr. Zhao's appeal on March 7, 2018.

**6. The denial of Mr. Zhao's appeal was based on false information.**

126.

In the letter denying Mr. Zhao's appeal, Student Conduct made many "mistakes."

127.

Their letter provided incorrect dates for his conduct violations, stating that on January 6 and January 22, Mr. Zhao was in possession of weapons on campus. The dates are actually January 6 and January 29.

128.

On January 22, 2018, Mr. Zhao did not own an AR-15 rifle, as he had not purchased it yet.

129.

Student Conduct did not even spell Mr. Zhao's name correctly.

130.

The letter also stated "in the second matter, on January 22, Virginia Tech police, upon execution of a search warrant, seized 700 rounds of ammunition, an AR-15 weapon, as well as a fixed blade knife from the trunk of your vehicle on campus." On January 22, Mr. Zhao did not own an AR-15 because he had not

purchased it yet. On January 29, when Virginia Tech Police executed their search warrant, the AR-15 was not found in the car because it was in the student gun locker on campus—per campus policy. And, as has already been stated, storage of ammunition is only prohibited in the residence halls, so that is not a violation of the Code of Student Conduct.

131.

Mr. Zhao's student gun locker check-in/check-out records show that his last recorded action was checking in the AR-15 on January 26, 2018.

132.

The University Student Conduct System only allows one appeal, so Mr. Zhao had no recourse left to try to remedy his unjust dismissal from Virginia Tech.

**7. Mr. Zhao petitioned the university to reopen his case anyway.**

133.

Even though Virginia Tech denied his only opportunity to appeal, Mr. Zhao wrote a Letter of Reconsideration to Student Conduct, outlining the falsehoods from his Appeal Denial, and asking if Virginia Tech would reopen his case to allow him an opportunity to be heard.

134.

Virginia Tech claimed that the false information was based on a typo and refused to reopen Mr. Zhao's case.

135.

The typo alleged that, instead of stating that Mr. Zhao had a gun in his car on campus at the time of his arrest—as the appeal denial letter states regarding items found in Mr. Zhao's car: "ammunition, an AR-15 rifle"—the sentence allegedly should have read "ammunition FOR an AR-15 rifle."

136.

At the time of his arrest, Mr. Zhao had more than one type of ammunition in his vehicle, used in more than one type of gun. Virginia Tech knew that Mr. Zhao owned two different types of rifles, since **he stored his firearms in the custody of the Virginia Tech police.**

137.

When given an opportunity to rehear the case, Virginia Tech refused for a third time to allow Mr. Zhao a meaningful opportunity to present evidence on his own behalf, stating that his expulsion from Virginia Tech was final, even though the "typo" Virginia Tech used to justify the denial of Mr. Zhao's request was far-fetched and inaccurate.

## COUNT I

### 42 U.S.C. § 1983 — VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS
### *(Against Defendant Settle and Clubb in their individual capacities)*

138.

Plaintiff now fully incorporates the facts and assertions found in

paragraphs 1–137, and any other facts this Court deems relevant, as if fully stated

herein to support all allegations made in this Count.

139.

Based on the incorporated facts that support this Count, Defendant Clubb

deprived Mr. Zhao of his constitutionally-protected right to procedural due

process by depriving him of a vested property interest in both (1) his vested

student status and his (2) vested student SEVIS record, which directly affects his

student visa. Mr. Zhao has a property interest in his student visa, which allows

him to lawfully remain in the United States. Mr. Zhao also has a vested property

interest in his enrollment at Virginia Tech, which is directly affected by his right

to remain within the United States lawfully and maintain a course of study at

Virginia Tech. Deprivation of a vested property interest without notice or an

opportunity to be heard — especially when disciplinary procedures for such

opportunities are available at Virginia Tech — is a violation of Mr. Zhao's rights.

Furthermore, Clubb admitted, essentially, to a policy that notice is given to

international students who fall short of their credit hours, to "get right." This policy helped create the very due process Zhao was denied in this instance. Zhao was entitled to notice and an opportunity to be heard prior to his SEVIS termination based on Virginia Tech policy and procedure during it ordinary course of conduct when dealing with international students whose credit hours fall below full time. Furthermore, and based on the incorporated facts to support this Count, and upon information and belief, Clubb knew that Zhao was arrested and thus terminating his VISA status would lead to Zhao being detained by ICE for potential deportation; consequently, Clubb knew that Zhao would also lose his student status by terminating Zhao visa status, yet, Clubb did not provide Zhao with notice and a meaningful opportunity to be heard (due process) regarding this issue either. As a result, Mr. Zhao is entitled to compensatory damages permissible under controlling law.

140.

Based on the incorporated facts that support this Count, Defendant Settle deprived Mr. Zhao of his constitutionally-guaranteed right to procedural due process. Mr. Settle refused to reschedule Mr. Zhao's hearing when Virginia Tech knew he was incarcerated and was unable to call in for his hearing, and subsequently denied his only appeal based on false information. As a result, Mr. Zhao is entitled to compensatory damages permissible under controlling law.

Further, presenting written evidence in this case—or analogies to being on vacation in California—are insufficient; Mr. Zhao was in jail with limited ability to communicate; Mr. Settle knew that Mr. Zhao was in jail and had requested that his hearing be rescheduled—after relying on a written promise that the hearing be rescheduled *given to Mr. Zhao by the Virginia Tech Office of Student Conduct*; and yet refused to give Mr. Zhao the process he is due before depriving him of his enrollment at Virginia Tech.

## <u>COUNT II</u>
### INJUNCTIVE RELIEF AND DECLARATORY RELIEF
**(*Against Defendants Virginia Tech, Settle, and Clubb in their individual and official capacities.*)**

141.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1–140, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

142.

Based on the incorporated facts to support this Count, Mr. Zhao requests immediate injunctive relief in the form of mandating his re-instatement to Virginia Tech through the issuance of a new I-20 form, creation of a new SEVIS record, and all other benefits that come with acceptance to pursue an undergraduate degree at Virginia Tech and lawfully remain in the United States.

143.

Based on the incorporated facts to support this Count, Mr. Zhao requests immediate injunctive relief in the form of mandating an immediate re-hearing on the merits of his Student Conduct claim **at which he must be present** to present evidence on his own behalf.

144.

Based on the incorporated facts to support this Count, Mr. Zhao requests immediate declaratory relief in the form of declaring that his due process rights have been violated by Virginia Tech, Defendant Clubb, and Defendant Settle.

## PUNITIVE DAMAGES
### *(Against Defendant Settle and Clubb in their individual capacities)*

145.

**At the appropriate juncture in this case,** Plaintiff is entitled to, and will, make a legal claim, pursuant to governing law, for punitive damages against both Defendants Settle and Clubb in their individual capacities for blatantly violating Mr. Zhao's Constitutional rights, based on the facts discussed throughout this Complaint that pertain to both of these named Defendants.

## ATTORNEYS FEES
### *(Against Defendant Settle and Clubb in their individual capacities)*

146.

**At the appropriate juncture in this case,** Plaintiff is entitled to, and will, make a legal claim, pursuant to governing law, for attorney's fees for blatantly violating Mr. Zhao's Constitutional rights, based on the facts discussed throughout this Complaint that pertain to both of these named Defendants.

## RELIEF

WHEREFORE, Mr. Zhao respectfully requests the following relief:

1. That process issue and service be had on each Defendant;

2. That Plaintiff be immediately granted a hearing on the issue of the termination of his F-1 visa;

3. That Virginia Tech be ordered to immediately reissue Mr. Zhao a new I-20 so he can regain his F-1 visa;

4. That Plaintiff be granted another hearing regarding the Student Conduct violations against him so he has an opportunity to be heard once he has regained his visa status;

5. That Defendant Virginia Tech rewrite its Student Conduct policy to reflect general standards of procedural due process and correct the many inconsistencies found throughout those policies;

6.  That judgment be granted in favor of the Plaintiff against the Defendants for the injuries of Plaintiff;

7.  That Plaintiff recover compensatory damages including pain and suffering and all other expenses in an amount to be determined at trial;

8.  That Plaintiff recover all costs of this litigation;

9.  That a jury trial be had on all issues so triable; and,

10. That Plaintiff receives other and further relief as this Court deems just and proper.

Respectfully submitted this 14th day of August 2018,

/s/LILLIE W. BLANTON
Lillie W. Blanton
VSB No. 91733

**NEXUS DERECHOS HUMANOS ATTORNEYS, INC.**
1775 Tyson's Blvd., Suite 500
McClean, VA 22102
(540) 478-5309 / (703) 935-2453 FAX
lblanton@ndhlawyers.com

/s/MARIO B. WILLIAMS
Mario B. Williams
VSB No. 91955

44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 254-0442 / (703) 935-2453 FAX
mwilliams@ndhlawyers.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFF'S SECOND

AMENDED COMPLAINT has been served upon the Clerk of Court using the

CM/ECF system, which will automatically send email notification of such filing

to all counsel of record.

Respectfully submitted this 14th day of August 2018,

/s/ LILLIE W. BLANTON
Lillie W. Blanton
VSB No. 91733

**NEXUS DERECHOS HUMANOS ATTORNEYS, INC.**
1775 Tyson's Blvd., Suite 500
McClean, VA 22102
(540) 478-5309 / (703) 935-2453 FAX
lblanton@ndhlawyers.com

/s/ MARIO B. WILLIAMS
Mario B. Williams
VSB No. 91955

44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 254-0442 / (703) 935-2453 FAX
mwilliams@ndhlawyers.com
*Counsel for Plaintiff*