# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 1 6 2018

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

|  |  |  |
|---|---|---|
| YUNSONG ZHAO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:18cv00189 |
| | ) | |
| v. | ) | |
| | ) | |
| VIRGINIA POLYTECHNIC INSTITUTE | ) | By: Hon. Michael F. Urbanski |
| AND STATE UNIVERSITY, et al., | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In the third iteration of his complaint, plaintiff Yunsong "Bellamy" Zhao brings this action against Virginia Polytechnic and State University ("Virginia Tech"), Rohsaan Settle (Director of Student Conduct), and David Clubb (Director of the Cranwell International Center) (collectively "Virginia Tech Defendants"), asserting violations of his Fifth and Fourteenth Amendment right to due process under 42 U.S.C. § 1983. ECF No. 67. This matter is before the court on Virginia Tech Defendants' joint motion to dismiss Count II against Virginia Tech under Rule 12(b)(1), Counts I and II against defendant Clubb in both his official and individual capacities, and Counts I and II against defendant Settle in his individual capacity, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 71. Virginia Tech moves for dismissal of Count II for lack of subject matter jurisdiction, alleging that, as a public university, it is an agency of the Commonwealth of Virginia entitled to Eleventh Amendment immunity. Id. Virginia Tech also moves for dismissal on the grounds that it is not amenable to suit because it is not a "person" acting under color of state

law for the purposes of and as required by 42 U.S.C. § 1983 to state a claim. Id.; ECF No. 24, at 6.

With respect to Counts I and II, both defendant Settle and defendant Clubb contend that Zhao has failed to state a claim under 42 U.S.C. § 1983. Specifically, defendant Settle maintains that he is entitled to qualified immunity in his individual capacity. ECF No. 71, at 2. This court already denied defendant Settle's motion to dismiss claims against him in his official capacity on July 31, 2018. ECF No. 63. The court noted then and repeats now that it is not prepared to rule as a matter of law that Zhao was given sufficient opportunity to be heard during the February 2, 2018 student conduct hearing for purposes of due process. Id. Defendant Clubb moves for dismissal of the claims against him in their entirety on the grounds that Zhao had no cognizable property interest in his SEVIS status as such, and therefore had no right to notice and a hearing prior to its termination. ECF No. 44, at 2. Defendant Clubb also asserts that Zhao's claims against him in his individual capacity are barred by the doctrine of qualified immunity. Id. The court is mindful that the assertions of qualified immunity are being raised in the context of a motion to dismiss.

## A.

Yunsong "Bellamy" Zhao, a citizen of China, came to the United States on an F-1 student visa to study at Virginia Tech in July of 2017. Zhao was dismissed from Virginia Tech on February 5, 2018. The occurrence of three contemporaneous events give rise to Zhao's claims in this action brought under 42 U.S.C. § 1983.

The first event was Zhao's arrest on January 29, 2018 for illegal possession of an assault rifle by a non-United States citizen or permanent resident, in violation of Virginia

Code § 18.2-308.2:01. Those charges were dismissed by a Montgomery County Circuit Court Judge on September 24, 2018.

The second event was Virginia Tech's notifying the Department of Homeland Security via the Student and Exchange Visitor Information System (SEVIS) that Zhao had dropped below the requisite number of credit hours to maintain his status as a full-time student, as required by 8 C.F.R. § 214.3(g)(2). This event occurred on the same day as Zhao's arrest, January 29, 2018. Two days later, Zhao was issued a notice to appear by the Department of Homeland Security, stating he was removable from the United States because he failed to maintain his status as a full-time student.

The third event was a student conduct hearing held in Zhao's absence on February 2, 2018, four days after Zhao's arrest and the termination of his SEVIS status. At the time, Zhao was incarcerated on the gun charge. This hearing stemmed from his alleged possession of a prohibited knife on campus on two separate occasions.[1] Zhao was aware of this hearing, which had been scheduled prior to his arrest and incarceration. He met with Student Conduct Coordinator Kyle Rose on January 26, 2018 to discuss the hearing. Zhao alleges that on January 30, 2018, after his arrest on the gun charge the previous day, he used the first of his two free calls to try to contact his court-appointed criminal defense attorney, Jason Wolfrey, but was unable to reach Mr. Wolfrey and left a message with someone his office.

The following day, January 31, Virginia Tech police delivered a packet to Zhao at the Montgomery County Jail containing a notice from the Office of Student Conduct explaining that if "you need more time to review this new information, please contact Kyle Rose . . . to

---

[1] The first occasion was January 6, 2018, following contact with Virginia Tech police. The second was during execution of a search warrant following his January 29 arrest. Zhao was placed on interim suspension, and these two alleged violations of the student conduct policy were combined into one hearing, which was scheduled for February 2, 2018.

discuss hearing date options. If we do not hear from you, we will proceed with the hearing at the scheduled time (Friday, February 2nd, at 2 pm)." ECF No. 67, at 36. Zhao called Rose that same day per the instructions from Virginia Tech to request that Virginia Tech reschedule his hearing. Id. at 36-37. This was Zhao's last free phone call. Zhao was advised by Rose that if he was unable to attend the hearing in person, he could appear by telephone or written submission. ECF No. 60, at 39-41. Zhao claims he had no money to make additional calls or contact Virginia Tech by any other means. ECF No. 37, at 41. Virginia Tech did not reschedule the hearing. Id. In absentia, Zhao was found responsible for two counts of unauthorized possession of a weapon on campus and two counts of failure to comply with a university official. On February 5, 2018, Zhao was dismissed from the university. His appeal was denied. Zhao is now in the custody of the U.S. Immigration and Customs Enforcement Agency (ICE) in Farmville, Virginia.[2] He was denied bond by an immigration judge.

## B.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint need only contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is "facially plausible" when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

---

[2] Zhao was transferred to ICE custody after being released on bond on his gun charge pending in Montgomery County.

acted unlawfully." Id. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

While the court must accept as true all well-pled factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

In considering a motion to dismiss, the court is "generally limited to a review of the allegations of the complaint itself." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016). However, other evidence may sometimes be consulted:

> [The court] also considers documents that are explicitly incorporated into the complaint by reference, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and those attached to the complaint as exhibits, see Fed. R. Civ. P. 10(c). And . . . [the court] may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity. [Sec'y of State for Defence v.] Trimble [Nav. Ltd.], 484 F.3d [700], 705 [(4th Cir. 2007)]; Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

Id. at 166.

**D.**

Virginia Tech argues that Zhao's § 1983 claim against it cannot succeed as a matter of law because the university is not a "person" for purposes of § 1983. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must prove the deprivation of a civil right by a "person" acting under color of state law.[3] In Will v. Michigan Dep't of State Police, the Supreme Court plainly held that a suable "person" under § 1983 does not include a state, a state agency, or a state official sued in his or her official capacity for damages. 491 U.S. 58, 70-71 (1989). In other words, § 1983 does not provide "a federal forum for litigants who seek a remedy against a [s]tate for alleged deprivations of civil liberties." Id. at 71. Virginia Tech is designated by statute as a corporation under the control of the General Assembly, Va. Code Ann. § 23.1-2600 (2016), and as such its status is the same as any other state agency. See Carboni v. Meldrum, 949 F. Supp. 427, 433 (W.D. Va. 1996) (Virginia Tech is an arm of the state); Collin v. Rector & Bd. of Visitors of the Univ. of Va., 873 F. Supp. 1008, 1013 (W.D. Va. 2005) (Board of Visitors at UVA same as other state agencies). Virginia Tech clearly falls outside the scope of a "person" for § 1983 purposes.

Zhao's claims against Virginia Tech are also barred by the Eleventh Amendment. Virginia Tech is a constituent entity of the Commonwealth of Virginia, a fact Zhao does not and would have no basis for disputing. See Richard Anderson Photography v. Radford Univ., 633 F. Supp. 1154, 1158 (W.D.Va.1986); Carboni, 949 F. Supp. at 433 (Virginia Tech is entitled to Eleventh Amendment immunity). The Eleventh Amendment provides that "[t]he Judicial powers of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of

---

[3] Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute . . .subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."

another State, or by citizens or subjects of any foreign state." See, e.g., Hans v. Louisiana, 134 U.S. 1, 3 (1890). It is a matter of black letter law that a private individual cannot maintain a § 1983 suit against a state or a state agency in federal court on the basis of Eleventh Amendment immunity. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); see also Quern v. Jordan, 440 U.S. 332, 337-40 (1979). The unstated corollary to the Eleventh Amendment is that federal courts must refrain from exercising jurisdiction over suits commenced by the citizen of a state brought against the state of the citizen's domicile. Amaram v. Virginia State Univ., 476 F. Supp. 2d 535, 539-40 (E.D. Va. 2007), aff'd, 261 F. App'x 552 (4th Cir. 2008).

However, the Eleventh Amendment, pursuant to the Supreme Court's holding in Ex parte Young, does not bar Zhao's suit against the individual defendants in their official capacities to the extent that he seeks prospective injunctive relief. See Cobb v. The Rector & Visitors of Univ. of Virginia, 69 F. Supp. 2d 815, 824 (W.D. Va. 1999); see also Quern, 440 U.S. at 337; Ex parte Young, 209 U.S. 123 (1908). Zhao maintains that Ex parte Young goes even further, abrogating sovereign immunity as to Virginia Tech as well. ECF No. 74, at 5-6. The doctrine of Ex parte Young, which ensures that state officials may not employ the Eleventh Amendment as a means of avoiding compliance with federal law, is regarded as carving out a necessary exception to Eleventh Amendment immunity. See, e.g., Green v. Mansour, 474 U.S. 64, 68 (1985). Nevertheless, the exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and, crucially, has "no application in suits against the [s]tates and their agencies, which are barred regardless of the relief sought." Puerto Rico Aqueduct

& Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). In other words, the Ex parte Young exception does not permit Zhao to subject Virginia Tech to suit. The court finds that because Virginia Tech is (1) not a "person" amenable to suit under § 1983 and (2) is immune under the Eleventh Amendment, it lacks subject matter jurisdiction to adjudicate claims against it. The motion to dismiss Virginia Tech is **GRANTED**.

## E.

It is well settled that 42 U.S.C. § 1983 is not self-executing, and a plaintiff must assert the violation of a federal right, not merely a federal law, to maintain a claim. Blessing v. Freestone, 520 U.S. 329, 340-41 (1997). Zhao's § 1983 claim against defendant Clubb is predicated on an alleged deprivation of certain vested property interests in a manner violative of his due process rights under the Fourteenth Amendment. The Fourteenth Amendment prevents states from "depriving individuals of life, liberty, or property without due process of law." U.S. Const., amend. XIV, § 1, amend. V. To prove a procedural due process claim, Zhao must show that he has a (1) constitutionally cognizable property interest, that the (2) state deprived him of that interest, and that the (3) deprivation was effectuated without constitutionally sufficient process. Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013). There is no property right that exists in procedures themselves. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). It is well-settled that "[a] protected property interest cannot be created by the Fourteenth Amendment, but rather must be created or defined by an independent source," most often state law. Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 109 (4th Cir. 2011); see also Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly

must have more than . . . a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). Zhao contends that defendant Clubb unlawfully deprived him of two vested property interests—his right to enrollment as a student at Virginia Tech and his vested SEVIS status—without due process. ECF No. 67, at 2; ECF No. 74, at 10-13. He argues these property interests are inextricably intertwined; but even if they are not, Zhao claims he has an independent property interest in his SEVIS status. The court finds that Zhao's claimed property interest in continued enrollment at Virginia Tech is factually distinct from his SEVIS status, and that Zhao did not possess, nor is there any legal basis for recognizing, an independent, stand-alone property interest in his SEVIS status.

Under federal law, a university that admits international students must comply with specific federal regulations governing the maintenance of data related to a student's F-1 visa status through SEVIS. The SEVIS database "tracks the entry, stay, and exit of foreign students in the United States." ECF No. 43, at 3. Through this system, a designated student official transmits student data via the SEVIS database to the U.S. Department of Homeland Security for review.

Here, Zhao alleges that prior to modifying his status in the SEVIS database to reflect his failure to satisfy the federally mandated threshold of twelve credits, due process required that he receive notice and a hearing. The basis for this due process claim is that Zhao's "SEVIS record at Virginia Tech . . . is inextricable from his vested property interest to attend school at Virginia Tech," ECF No. 70, at 18, and thus due process protections extend to changes made to his SEVIS record. ECF No. 67, at 5, 20.

The facts before the court indicate that the plaintiff's SEVIS status and property interest in continued enrollment at Virginia Tech are, contrary to Zhao's claim, clearly divisible. Indeed, Virginia Tech stated that it does not prohibit students from continuing enrollment based upon either their SEVIS status specifically or immigration status generally. In a prior federal action, Virginia Tech stated that it "does not take immigration status into account in either admissions or enrollment." Equal Access Education v. Merton, 305 F. Supp. 2d 585 (2004) (Brief by Defendants In Support of Motion for Summary Judgment, filed June 8, 2004, ¶ 81). Furthermore, there is no evidence suggesting that the ministerial act of modifying Zhao's SEVIS record as required by federal law resulted in the termination of his enrollment at Virginia Tech. Instead, the termination of a student's SEVIS status results in a "hold," requiring that the student confer with Virginia Tech officials prior to registering for a new academic term. ECF No. 27; ECF No. 43, at 2-3. The affidavit from the deputy registrar indicates that Virginia Tech did not consider Zhao officially dismissed until after the unrelated student conduct hearing was held. In other words, the termination of Zhao's claimed property interest in continued enrollment was factually unrelated to the change in his SEVIS status.

Insofar as the modification of Zhao's SEVIS record implicates his F-1 visa and immigration status, whatever due process he is owed with respect to these issues is the prerogative of and provided for in the immigration courts, not the hallways of Virginia Tech. Virginia Tech's termination of Zhao's SEVIS status neither resulted in his deportation nor in the revocation of his F-1 visa. Merely modifying Zhao's status in the SEVIS database, a clerical duty performed as a preliminary matter and in accordance with federal regulations,

therefore does not itself engender due process protections. For his part, Virginia Tech's designated school official, defendant Clubb, stated that he "lacked the discretion or authority to retain Zhao as a student," and that in updating Zhao's SEVIS record, he was "fulfill[ing] my obligation required by U.S. Immigration and Customs Enforcement to immediately report Mr. Zhao's noncompliance" with SEVIS. ECF No. 15, at Ex. A. Ultimately, it is the immigration courts, and not Virginia Tech, that will adjudicate Zhao's immigration status, and there is no contention in this case that Zhao's immigration proceedings have lacked due process protections.

Zhao argues in the alternative that even if his SEVIS status is held to be separable from his claimed property interest in continued enrollment, defendant Clubb nonetheless still violated his due process rights because he possessed an independent property interest in his SEVIS status. The plaintiff does not proffer any legal basis for this claim. Indeed, the only case specifically addressing the question of whether a student possesses a property interest in his or her SEVIS status giving rise to due process protections concludes that there is not. In that case, Bakhtiari v. Beyer, the district court determined that neither the SEVIS regulations nor the enabling legislation indicate any congressional intent to create a private right of action or to otherwise benefit a person in the plaintiff's position. No. 4:06-CV-01489(CEJ), 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008). Furthermore, in Fan v. Brewer, a case later affirmed by the Fifth Circuit, the district court held that merely updating a student's SEVIS record to reflect their changed academic status did not violate any constitutional right. Fan v. Brewer, No. CIV.A.H-08-3524, 2009 WL 1743824, at *8 (S.D. Tex. June 17, 2009), aff'd sub nom. Fenghui Fan v. Brewer, 377 F. App'x 366 (5th Cir.

2010). The Fifth Circuit, in affirming the district court, noted that by updating the SEVIS database, the employee in question was "merely fulfilling her duty under federal law." Fenghui Fan, 377 F. App'x at 368. Finally, Zhao failed to cite any precedent or regulation requiring Virginia Tech or any other university to provide notice and a hearing before changing his SEVIS status.

In sum, because there is no legal basis or precedent supporting Zhao's contention that his SEVIS status constitutes an independent property interest implicating due process, and because changing his SEVIS status does not invariably implicate his claimed property interest in continued enrollment at Virginia Tech, adjusting Zhao's SEVIS record without prior notice and a hearing did not violate any constitutional right to due process. Therefore, the court need not decide whether defendant Clubb was entitled to Eleventh Amendment immunity in his official capacity or qualified immunity in his individual capacity. In the absence of an underlying constitutional violation to buttress his § 1983 claim, it necessarily must fail. The motion to dismiss defendant Clubb is therefore **GRANTED**.

## F.

Zhao's claims against defendant Settle in both his official and individual capacities are predicated on a claimed violation of his due process rights during the February 2, 2018 student conduct hearing which resulted in his expulsion from Virginia Tech. Specifically, Zhao alleges that defendant Settle, who presided over the February 2 hearing, "blatantly ignored" Zhao's due process rights by "holding a hearing while knowing Mr. Zhao could not attend said hearing, and never attempting to re-adjust the hearing date so that Mr. Zhao could attend a hearing that affected his entire life." ECF No. 67, at 4. Zhao claims that this

conduct deprived him of a "meaningful opportunity to be heard." Id.[4] In light of the court's refusal to rule as a matter of law that Zhao was given a sufficient opportunity to be heard during the February 2, 2018 student conduct hearing for purposes of due process, his official capacity claim for injunctive and declaratory relief (Count II) against defendant Settle may proceed. The only remaining issue for the court to decide at this juncture is Zhao's claims against defendant Settle in his individual capacity.

In contrast to actions against state officials in their official capacity, actions in their individual capacity trigger an analysis of qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 807-08 (1982). The doctrine of qualified immunity serves to protect a government official from liability in his individual capacity in performing discretionary tasks "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The doctrine "ensures that [state] officials can perform their duties free from the specter of endless and debilitating lawsuits." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (quoting Torchinsky v. Siwinski, 942 F.2d 257, 260 (4th Cir. 1991)). Under Wilson v. Layne, courts considering qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Smith v. Rector & Visitors of Univ. of Virginia, 78 F. Supp. 2d 533, 539 (W.D. Va. 1999) (citing Wilson v. Layne, 526 U.S. 603 (1999)). In cases where a due process violation is alleged, a

---

[4] Zhao alleges that student conduct informed him after his January 29 arrest that both instances of possessing a knife on campus would be combined into one hearing, which was scheduled for February 2. Zhao called his student coordinator Kyle Rose on January 31 and asked him to reschedule the hearing because he was incarcerated. Zhao and Rose did not speak further, and the hearing proceeded as scheduled in Zhao's absence.

court must determine whether the asserted interest is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property" before embarking upon a Wilson analysis of qualified immunity. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Board of Regents v. Roth, 408 U.S. 564, 569-572 (1972). The court will proceed accordingly, first addressing the alleged property interest at stake and then proceeding to discuss the defendant's claim of qualified immunity.

### G.

In Count I, Zhao alleges that defendant Settle violated his Fourteenth Amendment right to due process by depriving him of his interest in continued enrollment at Virginia Tech without a meaningful opportunity to be heard. ECF 67, at 4. The Supreme Court has assumed, without actually deciding, that university students possess a "constitutionally protectible property right" in their continued enrollment in a university. Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 223 (1985); see also Board of Curators of the Univ. of Missouri v. Horowitz, 435 U.S. 78, 91-92 (1978) (assuming that academic dismissals from state institutions can be enjoined if they are arbitrary or capricious); Henson v. Honor Comm. of the Univ. of Virginia, 719 F.2d 69, 73 (4th Cir. 1983) (assuming that student had "protectable property or liberty interest" in Honor Committee disciplinary proceeding); Tigrett v. Rector & Visitors of Univ. of Virginia, 290 F.3d 620, 627 (4th Cir. 2002). "It is no longer open to question that any expulsion from a state university or college must comport with the Due Process Clause of the Fourteenth Amendment." Tigrett, 137 F. Supp. 2d at 675 (citing Goss v. Lopez, 419 U.S. 565, 576, n. 8 (1975), and Wood v. Strickland, 420 U.S. 308, 329 (1975)).

## H.

In light of Zhao's apparent property interest in continued enrollment at Virginia

Tech, the "question remains what process is due." Morrissey v. Brewer, 408 U.S. 471, 481

(1972). Where a student faces expulsion, the Fourth Circuit has embraced the Fifth Circuit's

decision in Dixon v. Ala. State Bd. of Edu., 294 F.2d 150, 158 (5th Cir. 1961), that the

following due process standard should apply:

> The notice should contain a statement of the specific charges and
> grounds which, if proven, would justify expulsion under the
> regulations of the [University]. The nature of the hearing should
> vary depending upon the circumstances of the particular case. The
> case before us requires something more than an informal interview
> with an administrative authority of the college. By its nature, a
> charge of misconduct, as opposed to a failure to meet the scholastic
> standards of the college, depends upon a collection of the facts
> concerning the charged misconduct, easily colored by the point of
> view of the witnesses. In such circumstances, a hearing which gives
> the . . . administrative authorities of the college an opportunity to
> hear both sides in considerable detail is best suited to protect the
> rights of all involved. This is not to imply that a full-dress judicial
> hearing, with the right to cross-examine witnesses, is required. Such
> a hearing, with the attending publicity and disturbance of college
> activities might be detrimental to the college's educational
> atmosphere and impracticable to carry out. Nevertheless, the
> rudiments of an adversary proceeding may be preserved without
> encroaching upon the interests of the college.

Cobb v. Rector & Visitors of Univ. of Va., 69 F.Supp.2d 815, 828–29 (W.D.Va.1999)

(alterations and omissions in original) (quoting Dixon, at 158–59 (5th Cir.1961)); see also

Henson,719 F.2d at 74 ("Although Dixon was decided more than twenty years ago, its

summary of minimum due process requirements for disciplinary hearings in an academic

setting is still accurate today."). The Supreme Court has held that, at the very least, students

facing suspension or expulsion and the concomitant interference with a protected property

interest must generally be "given some sort of notice and afforded some kind of hearing." Goss, 419 U.S. at 579. "The fundamental requisite of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U.S. 385, 394 (1914). Yet, the "process due in any particular case is governed by what the 'particular situation demands.'" Doe v. Alger, 228 F. Supp. 3d 713, 729 (W.D. Va. 2016) (quoting Morrissey, 408 U.S. at 481). "The nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961).

## I.

Mindful of this standard, the court turns to the first prong under Wilson, i.e., whether Virginia Tech's decision to press ahead with Zhao's student conduct hearing in his absence violated Zhao's right to due process. The court will discuss, but ultimately abstain from deciding this question, confident that regardless of its holding under the first prong of Wilson, Zhao has failed to demonstrate a violation of a clearly established constitutional right necessary to overcome qualified immunity under the second prong.

In rebutting Zhao's claim that holding the student conduct hearing in his absence violated due process, the defendant first argues that due process in the student disciplinary context does not require the physical presence of the accused, citing Uzoechi v. Wilson for this proposition. No. CV JKB-16-3975, 2018 WL 2416113, at *1–2 (D. Md. May 29, 2018), aff'd, 735 F. App'x 65 (4th Cir. 2018). The defendant's second, related argument also relies on Uzoechi, this time for proposition that where a student fails to take advantage of the process available to him, he is precluded from grumbling about that process which was not. In Uzoechi, the plaintiff, a student at Morgan State University ("MSU") in Maryland, was

accused of sexual assault and arrested after the incident was reported to MSU police. Id. The plaintiff's attorney wrote to MSU student conduct officials on at least two occasions and informed them that his client was in jail, could not attend a scheduled hearing, and requested the hearing be postponed until his client could physically attend. MSU refused to postpone the hearing, found the plaintiff responsible in absentia, and expelled him from the university. Id. The plaintiff in Uzoechi asserted that holding the hearing in his absence violated due process. Id.

The facts of Uzoechi, although redolent of those before the court in this case, are dissimilar in several critical respects such that the defendant's reliance on it is somewhat diminished. The Uzoechi court cabined its holdings that "physical absence from a hearing is not an automatic constitutional deficiency" by holding that "whether a person is able to physically attend his disciplinary hearing only matters insofar as it affects his right to be heard." Id. at 9. The court, after reiterating that the plaintiff "did not simply miss the hearing; he was physically unable to attend because he was in jail," reaffirmed that the "crucial question . . . is not whether [p]laintiff was able to attend the hearing," but "whether [p]laintiff was given notice of the charges and an opportunity to be heard." Id. at 9-10. The court made much of the fact that the plaintiff did not, for example, (1) allege "that he (or his counsel) tried to submit affidavits" to the disciplinary board, (2) "that his counsel tried to go to the hearing in [p]laintiff's stead," or (3) that he "tried to have a witness appear at the hearing on his behalf." Id. Moreover, the court noted that the plaintiff did "not allege that he was denied such opportunities" and it was "undisputed" that he "could have at least tried to communicate his side of the story at the hearing." Id. In short, because the plaintiff did not

take advantage of the process available to him, the court concluded that it was "unable to weigh the problems that may have arisen if [p]aintiff had participated in the hearing (by whatever means were available to him)." Id.

In finding no constitutional infirmity, the court underscored that the plaintiff "does not allege, nor present evidence tending to show, that he was unable to present his side of the story at that hearing, and does not contest the evidence that suggests he had an opportunity to do so." Id. at 10. Herein lays the crucial distinction between the facts in Uzoechi and those in the case sub judice. Unlike the plaintiff in Uzoechi, Zhao does allege and does present evidence tending to show (1) that he was unable to present his side of the story at the February 2, 2018 hearing, and (2) that those opportunities available to the plaintiff in Uzoechi were unavailable to him.

The defendant insists Zhao was informed that if he was unable to attend the hearing in person, he could appear by phone or by written statement, and that his failure to do so should have the same preclusive effect on his due process claim as in Uzoechi. ECF No. 24, at 9. Zhao does not appear to contest that he was so informed. However, in response to defendant's contention that he neglected to "take proper advantage of the process made available to him," Zhao, quite plausibly, asserts that he had used up his two free phone calls and did not have money to place another or purchase stamps in the commissary to send a written statement to Virginia Tech. ECF No. 90. Zhao also testified in open court that he asked other inmates if he could borrow stamps or could place a call on their accounts, but was rebuffed. Id. Furthermore, Zhao claims to have asked the Chinese consulate to provide him money, but was told that because this request involved "public funds," "there's nothing

we can do." Id. To make matters worse, unlike the plaintiff in Uzoechi, Zhao did not have the benefit of being represented by independent legal counsel in the disciplinary matter at Virginia Tech. When Zhao tried to raise the scheduling issue with his court-appointed criminal defense attorney, Jason Wolfrey, the "first thing" Wolfrey allegedly told Zhao was that "this is not what I represent you for." ECF No. 90. In sum, Zhao claims what the plaintiff in Uzoechi did not; that he was physically unable to be heard. It was not until Zhao's mother visited him after the student conduct hearing and after Zhao received a letter of dismissal that he had the money to communicate with Virginia Tech, at which point he allegedly purchased stamped envelopes and wrote a letter appealing his dismissal. Id.

It is not lost on the court that Zhao was in custody at the Montgomery County Jail in the run up to his student conduct hearing and that as a practical matter, his ability to communicate with others, including Virginia Tech, was extremely limited. Nor is it the court's view that Zhao was responsible for exhausting every imaginable avenue which, with the benefit of hindsight, was conceivably open to him. That Zhao, for example, did not think to draft a written statement on the back of the envelope delivered to him by Virginia Tech police and pass that statement along to either Wolfrey or another inmate soon to be released, does not alone result in a forfeiture of his due process rights. The present facts, construed in the light most favorable to the plaintiff, suggest Zhao did his utmost, or at least what could reasonably be expected of him, to reach out to Virginia Tech under inauspicious conditions. The facts as alleged by plaintiff also contradict the defendant's portrayal of Zhao as sitting on his rights in manner that might restrain the court from finding a due process violation pursuant to the holding in Uzoechi.

# J.

Under the second prong of <u>Wilson</u>, the court must determine whether the contours

of the right were clearly established at the time of the alleged violation such that a reasonable

official would understand that their conduct was unlawful. <u>Id.</u> In the recent case of <u>D.C. v.</u>

<u>Wesby</u>, the Supreme Court held:

> To be clearly established, a legal principle must have a sufficiently
> clear foundation in then-existing precedent. The rule must be
> "settled law," which means it is dictated by "controlling authority"
> or "a robust 'consensus of cases of persuasive authority,'" It is not
> enough that the rule is suggested by then-existing precedent. The
> precedent must be clear enough that every reasonable official would
> interpret it to establish the particular rule the plaintiff seeks to
> apply. Otherwise, the rule is not one that "every reasonable official"
> would know.

138 S. Ct. 577, 589-90 (2018) (internal citations omitted). "In other words, existing law must

have placed the constitutionality of the officer's conduct "beyond debate." <u>Ashcroft v. al-</u>

<u>Kidd</u>, 563 U.S. 731, 741 (2011). This demanding standard protects "all but the plainly

incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341

(1986). In addition, "[w]e have repeatedly stressed that courts must not 'define clearly

established law at a high level of generality, since doing so avoids the crucial question

whether the official acted reasonably in the particular circumstances that he or she faced.'"

<u>al-Kidd</u>, 563 U.S., at 742 (internal quotation marks and citation omitted). <u>Id.</u> at 590. The

right must be "clearly established" in "a more particularized, and hence more relevant sense"

than simply an abstract statements such as the right to due process. <u>Anderson v. Creighton</u>,

483 U.S. 635, 640 (1986). "This is not to say that an official action is protected by qualified

immunity unless the very action in question has previously been held unlawful . . . but it is to

say that in light of preexisting law the unlawfulness must be apparent." Id. The Fourth Circuit has "emphasized repeatedly, officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015).

Given the holding in Uzoechi, this case represents just such a gray area. There is no clear precedent as to what a university's obligations are when a student is unable to attend a disciplinary hearing through no fault of the university. Prior to his arrest, Virginia Tech scheduled Zhao's student conduct hearing for February 2. Zhao received notice of the conduct violation alleged and was aware of the date on which the hearing was to be held, having already conferred with Rose in person during a pre-hearing meeting on January 26, 2018. ECF No. 67, at 32. Virginia Tech did not cause Zhao to miss the hearing; rather Zhao was arrested on a gun charge unrelated to his disciplinary woes at Virginia Tech. When the university learned that Zhao had been arrested, Virginia Tech police delivered to him in jail a notice containing the evidence against him. Shortly thereafter, Zhao was informed of alternative methods of appearing if he was unable to do so in person. ECF No.60, at 40-41. Was Virginia Tech required to postpone the conduct hearing, and if so, for how long and under what circumstances? Was Virginia Tech required to visit the jail and take a statement from Zhao before holding the hearing or otherwise supply him with a means to present his side of the story, such as a pre-stamped return envelope with the packet delivered to him on January 31, as plaintiff's counsel suggested at oral argument? These are difficult questions for which there are no straightforward answers. Plainly, the quantity and quality of process owed to a student in Zhao's unique situation cannot fairly be said to be "clearly established." It is

certainly not the case that "existing precedent . . . placed the statutory or constitutional question" confronted by defendant Settle "beyond debate." al-Kidd, 563 U.S., at 741; see Painter v. Doe 2016 WL 4644495, at*6 (W.D.N.C. Sept. 6, 2016) ("While the right to procedural due process is well established, due process rights in the context of a college disciplinary hearing are not."). In Uzoechi, which was affirmed by the Fourth Circuit, the court stressed that "it is not the [c]ourt's job to determine best practices for MSU's disciplinary process." 2018 WL 2416113, at *10 ("[H]olding a hearing in a student's absence is not a per se violation of the student's procedural due process rights."). Inasmuch as there is no clearly established constitutional deficiency under the second prong of Wilson, this court concurs with this view.

Accordingly, the court concludes that defendant Settle is entitled to qualified immunity. Quite simply, it was not "clearly established" that he was (1) obligated to accommodate a student in custody with an uncertain release date so that he could be physically present at the February 2 hearing, or (2) otherwise ensure that Zhao had the wherewithal while incarcerated to appear by alternative means. The court is satisfied that that defendant Settle did not violate any clearly established constitutional law and therefore is immune from suit in his individual capacity. The facts of Zhao's case set forth in the pleadings, affidavits, documents, and testimony adduced in open court reflect a perfect storm of academic, immigration, and criminal law difficulties culminating in Zhao's dismissal from Virginia Tech. The sui generis nature of Zhao's predicament placed his case within a gray area beyond clearly established boundaries. The motion to dismiss Counts I and II against defendant Settle in his individual capacity is therefore **GRANTED**.

## K.

Finally, Zhao makes a claim for both punitive damages and attorney's fees against defendant Settle and defendant Clubb in their individual capacities for "blatantly violating Mr. Zhao's constitutional rights." ECF No. 67, at 47-48. With no remaining substantive claims against either defendant in their individual capacities, Zhao's request for the punitive damages and attorney's fees is **DENIED**.

## L.

Accordingly and for the reasons set forth herein, the court **GRANTS** the motion to dismiss Count II against Virginia Tech, Counts I and II against defendant Clubb, and both counts against defendant Settle in his individual capacity. Those counts are **DISMISSED with prejudice**. The only remaining cause of action in this case is Count II for injunctive and declaratory relief against defendant Settle in his official capacity. An appropriate order will be entered.

Entered: 10/15/2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge